# Mebus's Estate.

*Wills—Construction—Life estate—Remainders—Issue—Rule in Shelley's Case.*

1. The rule of construction whereby a devise over, in the event of the death of the first taker, is generally understood to mean death occurring in the lifetime of the testator applies only when the will itself shows no other period to which the words, on a proper interpretation, may be referred.

2. The rule is never applied where the first takers referred to are treated as living at the period subsequent to the death of the testator.

3. Where a testator makes limitations over to survivors after the death without issue of the first taker, and names as remaindermen persons in being, a strong presumption is raised that an indefinite failure of issue is not contemplated; and this is strengthened when the limitation over is of but a life estate.

4. If it appears, either by expression or clear implication, that by the word "issue" testator meant issue living at a particular period, as at the death of the first taker, and not the whole line of succession, it must necessarily be construed as a word of purchase, and the rule in Shelley's Case can have no application.

5. Where testatrix devises her real estate in separate parcels to her three children respectively for life "only," with power to make loans on it even to exhaustion, remainder to "issue" if any, and if none to survivors, and if all should die without issue, "then so much of my estate as may then remain to sisters of testatrix," naming them, the children take a life estate only in the real estate respectively devised to them, and if they all survive the testatrix and die without issue, the sisters of the testatrix take such real estate.

Argued March 6, 1922. Appeal, No. 129, Jan. T., 1922, by Sarah E. Mebus, from decree of O. C. Northampton Co., dismissing exceptions to auditor's report, in Estate of Christiana Mebus, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Exceptions to report of F. W. Edgar, Esq., auditor.

The parts of the will of Christiana Mebus, deceased, necessary to an understanding of this case, are as follows:

"First. I direct that all my just debts and funeral expenses be paid......

"Second. It is my will that the family plot in the Easton Cemetery to be held by my......children [in] common, to be used only for the burial of themselves, husband of my daughter, the wives of my sons and the children of my children, only my own grand-children, excluding the children of any subsequent marriage of my son-in-law or daughters-in-law.

"Third. I give, devise and bequeath unto my beloved daughter Mary C. [certain real estate, describing it, including a property on "Pine Street"]. To have and to hold the same, the aforesaid described real estate, unto my said daughter Mary C. for and during the term of her natural life only, and, at and immediately upon her death, I give devise and bequeathe the same to her lawful issue if any, and if she dies without issue, then I give, devise and bequeath the same to her surviving brothers.

"Fourth. I give, devise and bequeath unto my beloved son, Frederick L. Mebus [certain real estate, describing it,—among others, a property on "Third Street"]. To have and to hold the same to him for and during the term of his natural life only, and upon his death, I give, devise and bequeathe the same to his lawful issue, if any, if none, then to his surviving sister and brother.

"Fifth. I give and devise unto my beloved son, J. Walter Mebus [certain real estate, describing it]. To have and to Hold The Same to him for and during the term of his natural life only and upon his death, I give devise and bequeath the same to his lawful issue, if any, and in default of issue, to his surviving brother and Sister.

"Sixth. I hereby authorize and empower either of my said children at his or her discretion, if it becomes necessary for support to make a loan or loans upon bond and mortgage or Judgment upon the real estate, bequeathed to either of them with the same force and effect that I could if living, my intention being to provide for the comfortable maintenance and support of my said children even though it should exhaust the whole of their respective estates and leave nothing for the remaindermen.

"Seventh. I, also, authorize and empower my executors, at any time they may deem it advisable in their discretion, to sell any part of the real estate devised for life as aforesaid at public or private sale and to reinvest the money securely for the same uses and purposes in other real estate or on bond and mortgage or Judgment and to sell real estate whenever it becomes necessary for purposes of distribution or division among my legatees so as to avoid partition proceedings. If all my said children should die without issue then so much of my estate as may then remain of whatever kind, I direct to be sold and converted into money and divided share and share alike among the lawful heirs of my sisters Catharine Lewers and Susannah Messer.

"Lastly. I nominate, constitute and appoint my said daughter Mary C. Richards, and my said sons, Frederick L. Mebus and J. Walter Mebus Executors of this my last will with full and ample power to make Deeds when necessary in accordance with the terms of this my will and to do all other necessary acts to carry out its provisions without application to the Orphans Court."

Signed by testatrix and dated September 14, 1894.

Other facts appear by the opinion of the Supreme Court.

Exceptions dismissed in opinion by STEWART, P. J. Sarah E. Mebus, widow of a son of decedent, and administratrix d. b. n. c. t. a. of decedent, appealed.

*Error assigned,* among others, was decree.

*Aaron Goldsmith,* with him *Calvin F. Smith,* for appellant.—The devise to each of the children of testatrix for life, and, on his or her death, to his or her lawful issue, created an estate tail in accordance with the rule in Shelley's Case, which, under the operation of the Act of April 27, 1855, P. L. 368, became a fee: Grimes v. Shirk, 169 Pa. 74; Angle v. Brosius, 43 Pa. 188; Hileman v. Bouslough, 13 Pa. 344; Rummell v. Dilworth, 111 Pa. 344; Swank's Est., 270 Pa. 395; Yarnall's App., 70 Pa. 335; Lawrence v. Lawrence, 105 Pa. 335; Kyner v. Hockersmith, 235 Pa. 586; Stout v. Good, 245 Pa. 388; Lauer v. Hoffman, 241 Pa. 315; McCann v. Barclay, 204 Pa. 214; Reifsnyder v. Hunter, 19 Pa. 41; Naglee's App., 33 Pa. 89; Hoxie v. Chamberlain, 228 Pa. 31; Evans v. Smith, 166 Pa. 625; Blair v. Oliver, 267 Pa. 434; Jackson's Est., 179 Pa. 77; Coles v. Ayres, 156 Pa. 197; Holmes v. Stanhope, 217 Pa. 63.

*Robert A. Stotz,* for appellees.—Frederick L. Mebus took a life estate only: Bedford's App., 40 Pa. 18; Stoner v. Wunderlich, 198 Pa. 158; Lauer v. Hoffman, 241 Pa. 315; Jessup v. Smuck, 16 Pa. 327; Stout v. Good, 245 Pa. 383; Kemp v. Reinhard, 228 Pa. 143; Taylor v. Taylor, 63 Pa. 481.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, April 10, 1922:

We have before us the question of the proper construction to be placed on the will of Christiana Mebus, late of Easton, Pa., deceased, which was made prior to the Act

of July 9, 1897, P. L. 213 (in reference to definite and indefinite failure of issue) ; a copy of those portions of the will which are here involved may be found in the Reporter's notes published in connection with this opinion. On the adjudication of an account, in the estate of the testatrix, the auditor and the court below determined that a fund, derived from the sale of real estate, and so accounted for, together with another piece of like property, which was ripe for distribution, belonged to persons other than Sarah E. Mebus, widow of a son of decedent, and ordered distribution accordingly; whereupon the latter filed this appeal.

Christiana Mebus, the testatrix, a widow, died September 1, 1896, leaving the following children: Mary C., the wife of A. N. Richards, Frederick L. Mebus, and J. Walter Mebus. These three, who were named as executors, survived their mother; but all of them died without issue. After the death of Frederick L. Mebus (the last of the three to die), his widow, Sarah E. Mebus, the present appellant, was appointed administratrix d. b. n. c. t. a. of the estate of Christiana Mebus, deceased, and, in that capacity, filed the account now before us.

Mrs. Mebus charges herself with a fund of $10,000, derived from the sale of a property on "Third Street," devised by testatrix, in the fourth item of her will, to Frederick L. Mebus; which real estate was sold by the latter, shortly before his death, the deed of conveyance being executed by him both in his individual capacity and as surviving executor of his mother's estate. In order to make distribution to those entitled under the will of Christiana Mebus, deceased, the court below also conceived it necessary to pass upon the question of the ownership of a property on "Pine Street," devised by testatrix in the third item of her will, this being the sole piece of real estate remaining undisposed of at the time of Frederick's decease. These two properties are the only real estate brought into the account for adjudication.

The determination reached was that both the fund in question and any money which might be derived from the Pine Street property belonged, and was distributable, to the lawful heirs of Catharine Lewers and Susannah Messer, the sisters of testatrix, named in the seventh item of her will.

We are not directly concerned, on this appeal, with any question as to the other pieces of real estate mentioned in testatrix's will; but, in order to determine the propriety of the decree from which this appeal was taken, we must examine the writing as a whole.

In the third item of her will, testatrix devised the Pine Street property to her daughter Mary, providing in immediate connection therewith as follows: "To have and to hold the same, the aforesaid described real estate, unto my said daughter Mary C., for and during the term of her natural life only, and, at and immediately upon her death, I give devise and bequeathe the same to her lawful issue if any, and if she dies without issue, then I give, devise and bequeath the same to her surviving brothers."

In the fourth item of her will, testatrix devises the property on Third Street, from which the fund of $10,000 was derived, to her son Frederick L. Mebus, providing in immediate connection therewith as follows: "To have and to hold the same to him for and during the term of his natural life only, and, upon his death, I give, devise and bequeathe the same to his lawful issue, if any, if none, then to his surviving sister and brother."

In the fifth item of her will, testatrix devises other real estate to her son J. Walter Mebus, providing in immediate connection therewith as follows: "To have and to hold the same to him for and during the term of his natural life only, and, upon his death, I give, devise and bequeathe the same to his lawful issue, if any, and in default of issue, to his surviving brother and sister."

"It is conceded by both sides to this controversy that the legal import [of the above quoted provisions] is iden-

tical," appellant and appellees, in their respective paper-books, so agreeing.

Mrs. Mebus contends, taking up the devise to Frederick, that testatrix evidently meant to provide therein against the possibility of the devisee dying in her, the testatrix's, lifetime, and that, in such event, the property devised to him should go to his issue, treating the first taker as a source of inheritance, thus providing for an indefinite failure of issue, vesting in the devisee an estate-tail, which, under the Act of April 27, 1855, P. L. 368, would be turned into a fee simple. In this way, appellant claims, the Third Street property, from which the $10,000 was derived, belonged to her late husband, Frederick L. Mebus, and the fund before the court is now payable to her by virtue of the will of the latter. As to the Pine Street property, devised in the third item of testatrix's will to Mary, appellant contends that, upon the death of the devisee without issue, this real estate became vested in Frederick, as the sole surviving brother of Mary, and, the limitation to such surviving brother (in the will of Christiana Mebus, deceased), being without any words to designate what estate he was to have, Frederick took in fee, by virtue of section 9 of the Act of April 8, 1833, P. L. 249, and appellant became entitled to the property under her brother's will. As before indicated, both of these contentions were overruled by the court below.

It is somewhat difficult to reconcile Mrs. Mebus's claims. If Frederick took an estate in fee in the properties originally devised to him, then, equally, Mary must have done likewise in those devised to her; and, if she had an estate in fee, there could be no remainder to her surviving brothers. Hence, upon the death of Mary, Frederick would have taken no interest in the property devised to her, she having willed all her estate to others. It is not necessary to further consider this aspect of the matter, however, since we agree with the court below that Mary and Frederick had but life estates, both in the

properties devised to them individually and in those
which they might take as surviving cross-remaindermen.

There can be no doubt testatrix intended to give each
of her children life estates "only," for, in the third,
fourth and fifth paragraphs of her will, she expressly so
states; but, if she likewise intended that the issue of her
children should take from the latter as a source of in-
heritable succession, this last mentioned intention would
control and give to each child an estate-tail, which, by the
Act of 1855, became a fee simple. Therefore, a prelimi-
nary question to be solved is, Did testatrix mean to em-
ploy the word "issue" as indicating a line of inheritance
from the devisee, or merely as a description of the per-
sons to take from her, the testatrix? In other words,
Did she intend an indefinite failure of issue? Again, in
this connection, Did she contemplate and intend to pro-
vide for the event of her children dying after her, with-
out leaving any issue surviving them at the time of their
death, or did she merely intend to provide for the con-
tingency of their death in her own lifetime?

In considering the above-stated questions, it appears
to us that the will itself shows testatrix meant exactly
what she said, namely, that each one of her children
should take the property devised to him or her "for and
during the term of [his or her] natural life only" and
that "upon [his or her] death," she, the testatrix, did
"give, devise and bequeath" such property to the de-
visee's lawful issue, provided that, at the time of death,
the devisee had issue to take, and, if no such issue ex-
isted, testatrix, herself, did "give, devise and bequeath"
the property in question to the surviving brothers or
sister of the devisee. All of this is shown by the third,
fourth and fifth items of the will.

That the cross-remainder to the surviving brothers and
sister of the respective devisees was, in each instance,
but for life, is shown by a study of the seventh item of
the will, which provides that "If all my said children
should die without issue, then so much of my estate as

may then remain......I direct to be......divided share and share alike among the lawful heirs of my sisters Catharine Lewers and Susannah Messer," and of the sixth item, which authorizes each one of the devisees to "make......loans upon......the real estate bequeathed to either of them......even though it should exhaust the whole of their respective estates and leave nothing for the remaindermen,"

The two above-quoted provisions, when read together, plainly show that the phrase "die without issue," in the seventh item of the will, means the same as the like phrase in the earlier items; and that by the words "may then remain," the testatrix meant to provide for so much of her estate (she, at this point, using the phrase "my estate"), as, at the time of the death of "all" of her children, might remain unexhausted through the exercise of the power to encumber given in the sixth item.

Had testatrix meant, by the expression "so much of my estate as may then remain," to comprehend only such of her property in which the last surviving child had been originally given a life estate, it is but reasonable to suppose she would not have provided, as she did, that this property should pass over to the third parties (of her own blood) designated by her, upon the death of all of her children, without issue, but would have said it should pass "on the death of the last of my children, without issue"; and it is hard to imagine why testatrix should desire to give this particular share of her estate to such ultimate distributees, while permitting the last survivor among her three children to retain in fee (and pass to persons not of her, the testatrix's, blood) the shares originally given to his brother and sister, which he took as the cross-remainderman who happened to survive their deaths without issue. However, as said before, an analysis of the will shows that, by "so much of [her] estate as may then [on the death without issue of all her children] remain," she had in mind simply so much of her property as at that time had not been exhausted

through loans negotiated thereon by her children, under
the power to encumber given to them in the sixth item of
the will.

Testatrix having already, in items 3, 4 and 5 of her will,
provided, by cross-remainders in favor of the survivors
and survivor among her several children, what should
happen to the properties left to each of them upon the
deaths of the first two dying without issue,—the life
estate of the first to go being divided between the two re-
maining, and, on the death of the second, the sole sur-
vivor to enjoy the whole,—since there would be no sur-
vivor of the third to die, it became necessary for her to
provide what should happen to so much of the estate as
might then remain unexhausted; therefore, by directing,
as is done in the seventh item, that, if all of her children
died without issue, such properties should be distributed
to the heirs of her own two sisters, she, through the crea-
tion of this final remainder interest (call it an executory
devise, substitutionary remainder, or what one will),
effectually carried out her intent that none of her own
children should enjoy more than a life estate in any of
her properties.

It would seem unreasonable to suppose testatrix meant
to confine each of her children to a life estate in the
particular properties originally devised to them,—as she
plainly states, and as we have found to be her purpose,—
and then intended that, on their respective deaths, those
surviving, while enjoying such a limited interest in the
properties originally given by her to them, yet, by way of
remainder, should take a fee simple estate in the proper-
ties enjoyed for life by those predeceasing. No such un-
reasonable construction should be placed on the will
unless the language employed plainly shows it to be the
intent of the testatrix; and, as before stated, when the
writing is taken as a whole, we do not so understand it.
As we read the words of the will, it sufficiently appears
testatrix purposed that none of her children should take
more than a life interest in any of the property left by

her, and she never intended to constitute them or any of them a source of inheritable succession; this, in all probability, was to prevent, so far as she could, her estate from going to others than those of her own blood.

Before leaving the will itself, it is to be noticed that the power to alienate, given to the executors in the seventh item, is for specific purposes: (1) to reinvest the funds thus realized, subject to the same limitations as control the real estate devised,—that is, to change the form of the property but not to affect the estates therein; and (2) to facilitate distribution among those entitled to the principal. Some of the original executors might have found it necessary to exercise this latter power, in case any one of them had died leaving issue; or the successors of such executors might need to use it, in order to make ultimate distribution of the principal among those entitled, in the event of the death of all the original devisees without issue. Again, it is to be observed that the so-called power to consume, given by the sixth item of the will, is only by way of putting encumbrances on the real estate, thereby reducing its worth to the ultimate takers, but still leaving the property itself subject to the original limitations for its devolution marked out by the testatrix; in other words, a legal right to destroy the ultimate limitation over is not placed within the power of the first taker. All of which reaffirms our conclusion that the intent of the testatrix was to give her children life interests only, with authority to raise money for their support, if necessary, by borrowing on the real estate, and that this was arranged with the evident purpose of doing justice to testatrix's children, and, at the same time, carrying out her paramount intent to prevent the property disposed of by the will from going to others than those of her own blood, so far as she could attain that end. This latter purpose is shown by the whole scheme of the writing, and the idea is reinforced by the second item, in reference to the family cemetery lot, where testatrix particularly excludes the right of burial to children of any

subsequent marriages which her son-in-law or daughter-in-law might make.

The general principles and rules, controlling our present considerations, have been discussed at large in numerous previous opinions, some of them very recent, and need not be elaborated again at this time. After all is said, we must come back to the thought that the main points here involved are, whether or not testatrix meant a definite or indefinite failure of issue, and, hence, whether or not the rule in Shelley's Case applies. It merely remains for us to refer to a few general principles which seem particularly pertinent.

The rule of construction,—whereby a devisee over, in event of the death of the first taker, is generally understood to mean death occurring in the lifetime of the testator,—applies only when the will itself shows no other period to which the words may, on a proper interpretation, be referred; and the rule is never applied "where the first takers referred to are treated as living at a period subsequent to the death of testator": Stoner v. Wunderlich, 198 Pa. 158, 164. Here the whole will shows a contemplation by the testatrix that her children would survive her. The sixth item clearly refers to and treats them as living subsequent to the death of the testatrix, and authorizes them to borrow money on their shares of her estate, if necessary for their respective maintenance and support: therein testatrix particularly says, as to these possible loans, it is her intention "to provide for the comfortable maintenance and support" of her children, adding, "even though it should exhaust the whole of their respective estates and leave nothing for the remaindermen."

There is another relevant rule: When a testator makes limitations over to survivors, after the death without issue of the first taker, and names as remaindermen persons in being, a strong presumption is raised that an indefinite failure of issue is not contemplated (Stoner v. Wunderlich, 198 Pa. 158, 163), and this is strengthened

when the limitation over is of but a life estate (Id. 162). In the present instrument, the first limitation over, on default of issue, is to persons in being, namely, surviving brothers and sisters of the respective devisees, and, as before shown, these surviving brothers and sisters take but a life estate; all of which strongly indicates that testatrix intended a definite and not an indefinite failure of issue.

We recently said, in English's Est., 270 Pa. 1, 4, what had been held many times before: "If it appears, either by expression or clear implication, that, by the word 'issue,' the testatrix meant issue living at a particular period, as at the death of the first taker, and not the whole line of succession......it must necessarily be construed to be a word of purchase, and the rule in Shelley's Case can have no application" (see also Stout v. Good, 245 Pa. 383, 386); this is relevant here.

The assignments of error are overruled and the decree is affirmed; costs to be paid out of the fund for distribution.