# Waldron, Appellant, *v.* Wahl et al.

*Wills—Devise—Life estate—Dying without issue—Definite failure of issue.*

1. Where a testator devises land to his son with provision that testator's widow should have a home on the premises, and by codicil devises the same land to the same son for life and at the son's death "to go to his oldest son and entailed on his children and children's children," and if the son died without leaving male issue, "then the same to go to my grandson and his children's children," the son takes a life estate only.

2. In such case the limitation over was after a definite failure of issue, and the particular intent expressed is not to be defeated by implication of an estate tail.

3. The words "dying without issue" standing alone mean an indefinite failure of issue, but this construction will always yield to an apparent intent, on the face of the will, that the words were to have a more restricted meaning, and to be applied to descendants of a particular class, or at a particular time, and not to all the descendants of every generation.

4. Where a life estate alone is given and the rights of a male to take is to be determined by the existence of such a person at the death of the first taker, a limited estate alone will pass.

5. Where a father devises an estate to his son and uses words which raise a question as to the character of the son's estate, it will not be held that the death of the son during his father's lifetime was intended, where the will provided that the son should keep a home for testator's widow on the land after the decease of the testator, and that if he failed to do so, the land should pass directly

to a grandson as testamentary trustee to assure a proper home for the widow.

*Wills—Lease of oil—Life tenants—Surrender of portion of lease to life tenant—Releasing by life tenant—Merger.*

6. Where a father executes a lease of land for oil purposes for five years "and so long thereafter as found to be profitable," and subsequently dies having devised a life estate in the land to his son, and the son accepts a surrender of a portion of the land, and re-leases the same to other parties, the surrender does not work such a merger in the life tenant, in the absence of any evidence that he intended a merger, as will entitle the remainderman to claim after the death of the life tenant that the latter had no power to lease the land surrendered for a period beyond his own existence, and eject his lessees.

7. In such case, the son, as life tenant, had power to acquire other interests than those given him by will, and if he chose to acquire an interest in an existing lease he could do so, and dispose of it as he saw fit.

8. In acquiring such interest it cannot be assumed that he desired to remove charges on the land for the benefit of remaindermen, who held under a different right.

9. In order that a merger may occur, it is ordinarily necessary that one person hold the two estates in the same right.

10. Where a tenant for life executes a lease of the land which the remainderman with knowledge of it alleges is illegal, and it is impossible for the remainderman to assert his rights until after the death of the life tenant, he cannot be charged with laches if he institutes his action of ejectment, after the death of the life tenant, within the period fixed by the statute of limitations.

Argued March 18, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 137, March T., 1925, by plaintiff, from judgment of C. P. Butler Co., June T., 1925, No. 210, on verdict for defendants, in case of William S. Waldron v. A. R. Wahl et al. Affirmed.

Ejectment for land in Forward Township. Before HARVEY, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Judgment on directed verdict for defendants. Plaintiff appealed.

*Error assigned* was, inter alia, refusal of plaintiff's motion for judgment n. o. v., quoting record.

*Thomas H. Greer,* with him *John B. Greer* and *Zeno F. Henninger,* for appellant, cited: Lloyd's Est., 281 Pa. 379; Crawford v. Oil Co., 208 Pa. 5; Marshall v. Mellon, 179 Pa. 371.

*John H. Wilson,* with him *A. M. Christley,* for appellees.

OPINION BY MR. JUSTICE SADLER, April 12, 1926:

William S. Waldron, called senior here for convenience, since the plaintiff and appellant in the present proceeding bears the same name, was the owner of a tract of land in Butler County, containing 120 acres. On April 20, 1888, he leased fifty acres to one Phillips for oil and gas purposes. It will be noticed that the contract did not constitute a sale of the minerals in place (Prager's Est., 74 Pa. Superior Ct. 592), but merely granted the exclusive right to operate for five years, and so long thereafter as found to be profitable. By assignment, this right became vested in the South Penn Oil Company, which continued the working of wells drilled, removing the product found, and paying the royalties provided for by the contract.

On September 3, 1896, the lessor executed his will by which he devised the farm to his son, U. S. G. Waldron, providing, however, that his widow should have her home with the latter on the premises. By codicil, dated July 10, 1905, a modification was made, and testator then directed, in part, as follows: "I give and devise [the above land] to my son Ulysses S. G. Waldron for and during the term of his natural life and at his death to go to his oldest son and entailed on his children and

children's children. In case said Ulysses S. G. Waldron dies without leaving any male issue, then the same is to go to my grandson Wm. S. Waldron [the present plaintiff] and his children's children." There follows a provision that if the one first named shall not assume charge of the home property, it is to be taken over and managed by the grandchild referred to. This was evidently done to assure a proper place of residence for the testator's widow during her lifetime.

To reach a proper solution of the question now presented on appeal, it becomes necessary to first determine the estate of Ulysses as fixed by the codicil. In view of the words used, he was of the belief that an estate tail had been created, and, having survived his father, this became one in fee simple under the Act of April 27, 1855, P. L. 368. To bar the entail a deed was made in 1910, as permitted by the Act of January 16, 1799 (3 Sm. L. 338), and the grantee subsequently reconveyed to him. Of course, this was ineffective to enlarge his interest if the estate granted was only a limited one. It will be seen that, in express terms, Ulysses was given the farm for life only, with provision for other disposition of the land in case no male heir should be living at the time of his death. The limitation over was after a definite failure of issue, and the particular intent expressed is not to be defeated by implication of an estate tail. In a will, "dying without issue,"—in the present case, it is only one of possible issue, the male heir (Harris v. Potts, 3 Yeates 141),—standing alone means an indefinite failure of issue. But the construction will always yield to an apparent intent, on the face of the will, that the words were to have a more restricted meaning, and to be applied to descendants of a particular class, or at a particular time, and not to all the descendants of every generation: Beckley v. Riegert, 212 Pa. 91; McDaniel v. McDaniel, 219 Pa. 371.

The Act of July 9, 1897, P. L. 213, subsequently incorporated in section 14 of the Wills Act of June 7, 1917, P.

L. 403, provides that the words "die without issue," or words of similar import, shall, in the absence of a contrary intent, be construed to mean a definite, and not an indefinite, failure of issue. The question is, "Did the [testator] contemplate and intend to provide for the event of [his] children dying after [him], without leaving any issue surviving them at the time of their death, or did [he] merely intend to provide for the contingency of their death in [his] own lifetime"? (Mebus's Est., 273 Pa. 505, 512.) It is true that, if an absolute estate is given to one, and provision is then made for the contingency of dying without issue, it will be held that reference was had to death during the lifetime of testator and not thereafter: Seewald's Est., 281 Pa. 483. But where, as here, a life estate alone is given, and the right of a male heir to take is to be determined by the existence of such a person at the death of the first taker, a limited estate alone will pass: English's Est., 270 Pa. 1; Lewis v. Link-Belt Co., 222 Pa. 139; Donovan v. Woodworth, 234 Pa. 507. That death during the lifetime of the father was not the intention in the present case is further made evident by the fact that the will provided the son should keep the home for the mother after the decease of the testator, and, by the codicil, which directed that if he failed to maintain the farm for the purpose indicated, the land should pass directly to the grandson as a testamentary trustee.

Ulysses, now deceased and leaving no child, had but a life estate. Appellant frankly states in his argument that this question has been decided in the same way twice before by the Butler County courts, and, in this proceeding, for the third time, and "is not now in controversy." As tenant for life, an estate separate and distinct from that of the remainderman existed. There would have been no right on the part of the former to open oil and gas wells, had this not already been done by the testator: Marshall v. Mellon, 179 Pa. 371. Nor could he have leased the interest in the land acquired

from the testator for any purpose, which would extend beyond the term of his life, and bind the remainderman (Fee v. Lutz, 65 Pa. Superior Ct. 188), or surrender rights which the latter possessed, without consent.

On June 29, 1913, Ulysses made an adjustment and settlement of differences which had arisen between him and the South Penn Oil Company, assignee of the original lease made by Waldron, Sr., in 1888, which corporation was in possession of the land, and operating the wells. This was called a surrender and release of the right to occupy thirty of the fifty acres, covered by the first contract, the remaining portion, on which paying wells were located, being reserved by the lessee. A few months later, he re-leased the thirty acres to Phillips and others, the rights thereunder being subsequently assigned to the defendants in the present proceeding, for fifteen years, and so long as oil and gas were found in paying quantities, in consideration of the payment of certain royalties. The present plaintiff, grandson and remainderman, insists that the life tenant had no power to let for a period beyond his own existence, and, therefore, brought this action to evict those occupying the thirty acres, holding under the grant of Ulysses.

The defendants claimed that the interest acquired by their lessor, by agreement with the South Penn Oil Company, constituted an estate separate from the life interest in all the land, subject to the rights granted by his father in 1888 to the whole fifty acres, and that his acquisition of a portion of the leased property in no way altered his life estate, nor was there any merger into the same of the privileges secured by the agreement of 1913, above referred to. It was, therefore, insisted that the lease of the separately secured right was properly made, and did not terminate with the death of the life tenant, but continued in force so long as its terms were complied with. In the action of ejectment brought by the remainderman, the court gave binding instructions for

the defendants, and, from the judgment entered in their favor, this appeal is taken.

The real question here to be solved is the effect of the surrender of the South Penn Oil Company of the right to oil and gas in thirty of the fifty acres, originally leased from Waldron, Sr. The release of a part of the premises by the former did not affect its right to continue in possession of the remaining portion (35 C. J. 1096), and it is not named as a party defendant. Defendants' rights are to be measured by the extent of those possessed by the one who executed the grant: 35 C. J. 995. If Ulysses had been the owner in fee of the land, the smaller estate, possessed by the lessee of his father, would undoubtedly have merged therein, and been extinguished, just as would a remainder interest if acquired by a life tenant, or vice versa. "Nothing is better settled than that where a term for years, or life, exists in a person in his own right, and he subsequently acquired the fee in his right, the former is lost and merged in the latter. Where the term and the fee unite in the same person, but in different rights, it is otherwise": Kershaw v. Supplee, 1 Rawle 131, 132. So, a conveyance by the lessee to one of two lessors, does not work a merger, and extinguish the privilege granted, thus benefiting the second grantor who was not a party: 35 C. J. 1058. And the same is true where the interest acquiring the lesser estate is but an undivided part: Patterson v. United Nat. Gas Co., 263 Pa. 21; Willis v. Allen (Mo.), 237 S. W. 1030.

As life tenant, Ulysses had the power to acquire other interests than those given him by the will, and, unless there was a union by operation of law, could dispose of what he secured as he saw fit. His estate here was merely for life, and no intention can be assumed that he desired to remove charges on the land for the benefit of remaindermen, who held under a different right. "In order that a merger may occur, it is ordinarily necessary that one person hold the two estates in the same right"; and, consequently, if he holds one on behalf of himself,

and the second for another, then there can be no absorption of the lesser interest by the greater: Humphrey-Mexia Co. v. Gammon, 29 A. L. R. 607, 615, 254 S. W. 296; Tiffany on Landlord & Tenant, 188; 10 R. C. L. 666.

In the present case, a joinder of the two estates would not be for the benefit of the life tenant, but for those who came after. "It is only in those cases where it is perfectly indifferent to the party in whom the interests had united whether the change or term should or should not subsist, that in equity the term is merged": Dougherty v. Jack, 5 Watts 456, 458. It will not take place unless the parties so intend, nor be upheld where such result would not be for the benefit of the party in whom the several estates or interests have united: 10 R. C. L. 666. If the result of the joinder would be inequitable, it will be prevented: 21 C. J. 1035; Ferguson v. Ragland (Tex.), 243 S. W. 721, 724.

"It is very clear that a person becoming entitled to an estate subject to a charge for his own benefit, may, if he chooses, at once take the estate and keep up the charge. Upon this subject, a court of equity is not guided by the rules of law. It will sometimes hold a charge extinguished when it would subsist at law, and sometimes preserve it when at law it would be merged. The question is upon the intention, actual or presumed, of the person in whom the interests are united. In most instances it is, with reference to the party himself, of no sort of use to have a charge on his own estate, and when that is the case it will be held to sink unless something shall have been done by him to keep it on foot": Conley's Est., 197 Pa. 291, 295. The purpose of Ulysses in the present case to keep the right acquired from the South Penn Oil Company distinct from the life estate is indicated by his re-lease of the same property, within a few months, to the predecessors of the present defendants. There was no reason why he could not purchase or acquire an outstanding lease, which was to continue in

force as long as oil and gas were found in paying quantities, and, having secured the same as an individual, and not in his capacity as life tenant, he was not bound to forego the benefit of his bargain, if any, in favor of those having the estate in remainder.

It was suggested that plaintiff was estopped because of failure to object, having knowledge of the operations of the lessees, even prior to the death of Ulysses in 1919. Until that time, he had no power to institute an action of ejectment, but did act thereafter within the period fixed by the statute of limitations (Lloyd's Est., 281 Pa. 386), and the objection raised on this ground is without merit.   We are convinced, however, that there was no merger in the life estate of the interest purchased from the South Penn Oil Company, and that Ulysses was legally authorized to dispose of the right thus acquired, which he did by leasing to the present defendants, or their assigns.   Ejectment cannot, therefore, be successfully maintained so long as the terms of the agreement are complied with.

The judgment is affirmed.