In re Estate of Miller

C.P. of Chester County, No. 1514-0948

*Daniel B. Evans*, for executor/fiduciary.

*Jacques H. Geisenberger, Jr.* and *Andrew J. Throckmorton*, for respondent.

TUNNELL, *J.*, June 3, 2015—The Executor of the Estate of Scott P. Miller filed a Petition to Sell Real Property, pursuant to 20 Pa. C.S.A. §3353 of the Decedents, Estates and Fiduciaries Code (the "PEF Code"), entitled "Order of Court", namely in regard to a parcel containing a dilapidated commercial building. Attached to this is an apartment where the decedent resided with Respondent, Julia Koliopulos, a good friend, for several years before his death. Because of the condition of the property, the Petitioner alleged that the right of occupancy granted to the Respondent was illegal, impossible of fulfillment and void from inception. Ms. Koliopulos responded that she had a life estate, and that the sale of the property was neither desirable nor necessary for the proper administration and distribution of the estate.

After trial by the court, sitting without a jury, on March 16, 2015, and having considered the parties' briefs, the court determines that Ms. Koliopulos has a right of occupancy, not a legal life estate, but that notwithstanding the dilapidated condition of the commercial building to which her apartment is attached, it is against the testator's intention to dispossess her and make her gift virtually worthless under the circumstances presented. The court makes the following:

## FINDINGS OF FACT

1. Scott P. Miller (the "decedent" or "testator"), died on May 19, 2014, at the age of 62, a resident of Lower Oxford Township, Chester County, Pennsylvania. [Petition and Answer, ¶1.]

2. The will of the decedent dated February 18, 2014, was probated by the Register of Wills of Chester County, No. 1514-0948, and letters testamentary were granted to the petitioner, Pamela M. Miller. [Petition and Answer, ¶ 3.]

3. A later will was discovered, dated May 8, 2014, which was identical in its provisions to the will admitted to probate (the "Will"). Upon the petition of the petitioner, the Register of Wills amended its records to admit the later will to probate as the last will of the decedent. [Petition and Answer, ¶ 4.]

4. Testator in Item Second of the Will gave to his friend, Julia Koliopulos (the "Respondent") a vehicle of her choice from the estate. [Will, 5/8/14, at 1.]

5. Testator in Item Third of the Will directed that all personal effects be sold and added to the residue of his estate. [Will, 5/8/14, at 1.]

6. Testator gave the residue of his estate to his daughter, Pamela M. Miller, the Petitioner. [Will, 5/8/14, at 2.]

7. Julia Koliopulos resided with the decedent at the time of his death at 448 Calvary Road, Nottingham, PA 19362. [Petition and Answer, ¶ 5.]

8. By Item Third of his wills dated February 18, 2014, and May 8, 2014, the decedent specifically devised his property known as 448 Calvary Road, Nottingham, Pennsylvania, upon the following terms:

In the event that I own the property located at 448 Calvary Road, Nottingham, Pennsylvania at the time of my death, I give and bequeath said real property to my daughter, PAMELA MAY MILLER of Marcus Hook, Pennsylvania; provided, however, that if my friend, JULIA KOLIOPULOS, survives me she shall have the personal right to use and occupy said property, rent free, for the remainder of her life, or until such time as she vacates the property and takes up residence elsewhere, whichever event shall occur first.

Such right shall be subject to the condition that JULIA KOLIOPULOS shall be responsible for the timely payment of utilities. However, I direct that my daughter, PAMELA MAY MILLER, shall be responsible for the timely payment of all real estate taxes and homeowners' insurance and repairs and maintenance. JULIA KOLIOPULOS shall not have any right to reimbursements from the estate or from my daughter with respect to any expenditures which she makes related to the said property.

[Petition and Answer, ¶ 6.]

9. In addition to those powers conferred by law, Testator expressly granted Petitioner a number of discretionary powers to be exercised without court approval in Item Ninth including "(b) To sell any and all real estate held as an asset in my estate and trust estate at such times, at public or private sale, for such prices and upon such terms as deemed advisable, then to make, execute and deliver any deed or deeds therefore, conveying title thereto, in fee simple absolute, or for any less estate to any purchaser or purchasers." [Will, 5/8/14, at 3.]

10. Julia Koliopulos resided with Testator for some years prior to his death in a house owned by decedent at 450 Calvary Road.

11. Decedent subdivided this property into two (2) parcels (448 and 450 Calvary Rd.) several years prior to commencing the relationship with Julia Koliopulos. When decedent sold 450 Calvary Road, he retained 448 Calvary Road and he and Ms. Koliopulos moved into an apartment there, where they lived together for at least three (3) years preceding his death. [N.T., pp. 74-75.]

12. The main improvement on the property is a commercial building, at one time used as part of a mushroom farm operation. [N.T., p. 8, ll. 15-21.]

13. The apartment was added at some point to the rear of the mushroom building. [Ex. P-1.]

14. There is no other residential building on the property. [N.T., p. 8, ll. 14-15.]

15. The apartment shares a common wall with the mushroom building.

16. The apartment is fully functional as a residential unit, equipped with an on-site well and septic system, hot and cold water, electricity, indoor plumbing including a shower and toilet, and other infrastructure required to provide utilities to the apartment. [N.T., p. 83.]

17. John Smirga, who testified for the Petitioner regarding the property's condition, is a licensed professional engineer and was qualified as an expert witness on building construction and building code requirements.

18. The roof over the mushroom house has partially collapsed.

19. There are numerous areas of the concrete block walls of the mushroom building that are cracked. [Ex. P-1.] The slab on the southern side of the building attached to the apartment is cracked, and the wall adjacent to that crack has the worst damage of the building. [N.T., p. 11, 1. 22, to p. 12, 1.3.] In sections of the wall near the apartment, the blocks are separated by a couple of inches. [N.T., p. 11, ll. 15-19.]

20. No certificate of occupancy was issued by the Township of Lower Oxford for the property. [Ex. P-2.]

21. The Respondent has not applied for a certificate of occupancy. [N.T., p. 107, 11.19-20.]

## DISCUSSION

Grant of Life Estate or Only Right of Occupancy

In Pennsylvania, the right of a person to do what he wishes with his own property has always been liberally construed. *Cannistra's Est.*, 384 Pa. 605, 121 A.2d 157

(1956). A testator has a right to dispose of his property with such restrictions and limitations that are not repugnant to law as he sees fit, and his intentions ought to be carried out unless they contravene some positive rule of law or are against public policy. *Moorehead's Est.*, 289 Pa. 542, 137 A. 802 (1927).

The pole star in construction of any will is the intention of the testator. *Britt's Est.*, 369 Pa. 450, 87 A.2d 243 (1952) Did the testator in this case intend to devise an estate in land, or did he merely intend the gift of a privilege, personal to the recipient, to reside until she might move away or die?

Of initial consideration is the phrase "use and occupy". Our courts have interpreted this phrase in various ways depending on its use and position in the will and the purpose for which its interpretation is sought. As stated by Mr. Justice Bell in *Fry v. Stetson*, 370 Pa. 132, 134, 87 A.2d 305, 307 (1952):

> The authorities in this and other states are not in accord as to whether the words 'use and occupy' have a fixed meaning or create a personal license or a life estate. Their meaning must depend on the language employed in each case.

An examination of the cases well illustrates what was said in *Long's Est.*, 270 Pa 480, 487, 113 A. 675, 677 (1921):

> precedents are of little value in the construction of wills, because when used under different circumstances and with different context, the same words may express different intentions. When the intent of the testator, and

> by that is meant his actual intent, can be fairly gathered from his words, the fact that another testator has used the same words with a different meaning is of no avail.

It would therefore scarcely be helpful to analyze in detail cases which involved a question similar to that here presented since the decisions naturally depended upon their own peculiar facts. *Baldesberger v. Baldesberger*, 378 Pa. 113, 105 A.2d 713 (1954).

The normal indicia of a life estate may be said to be these. A life estate is an estate in land which the devisee holds only for the duration of his or her life. A life tenant is entitled to possession of the property as long as the estate endures. *Herd Est.*, 20 Fid. Rep. 2d. 149, 151 (O.C. Div. Allegh Co. 2000), *annotated in* Fiduciary Review, Sept. 2005. The life estate endures even though the life tenant chooses to live elsewhere and to convey his or her interest. *Id.* Consequently, a life estate is alienable. Ordinary repairs and maintenance are indicia of a life estate, as are the payment of taxes and mortgage payments, but the payment of rent is not. *Id.* at 151-152; *accord, duPont Est.*, 13 Chester Co. Rep. 302, 316 (1965)("obligations for taxes, repairs and other costs of maintenance [are] normally incidental to a life estate"). The burden of current carrying charges, including real estate taxes, interest on encumbrances and repairs is upon life tenant. *See generally*, 45 Dickenson Law Review 218. A life tenant is responsible for normal repairs but not for capital improvements. *Worley v. Wolfe*, 14 Fid. Rep. 2d. 104, 105 (O.C. Div. Adams Co. 1993). There are exceptions to these rules either based on the contrary intent of the creator of the interest, the agreement of the parties, if improvements were commenced before

the life estate came into existence, or if improvements were made pursuant to government compulsion. *Id.* (*citing* RESTATEMENT OF PROPERTY, §139 (1936)), *annotated in* Fiduciary eview, May 1994.

By contrast, a right to occupy the residence is ordinarily a personal privilege or license, not a life estate in land. *Davis Est.*, 76 Mont. Co. L.R. 523, 22 D. & C. 2d. 755, 760 (1960)(Opinion by Taxis, P.J.). The enjoyment of a right to occupy a residence depends upon the express condition that the person shall continue to reside there. *Id.* This right is not alienable, and is not liable to judgment and execution by the creditors of the holder of the privilege. *Id.* Whereas a life tenant pays no rent, the payment of rent by the holder of a right of occupancy is an appropriate incident. *Id.*

A life estate is valuable. A legal life tenant can lease his estate. *Waldron v. Wahl*, 286 Pa. 237, 133 A. 252 (1926). Upon the sale of the residence, a life tenant has been held entitled to receive the portion of the proceeds attributable to the value of her life estate. *Hewitt Est.*, 554 Pa. 486, 721 A.2d 1082 (1998). The common law rule deems that an estate for life is equal in value to one-third of the whole. *Paget Est.*, 15 Fid. Rep. 2d. 339 (O.C. Div. Mont. Co. 1995)(Judge Ott awarding the same to the widow free of trust). By contrast, the holder of a personal right of occupancy has no such valuable estate and has nothing to sell. The grant of the privilege is personal to him or her.

Whereas a life estate is subject to an inheritance tax, *Kinert Est. v. Pa. Dept. of Rev.*, 693 A.2d 643 (Pa. Cmwlth. 1997), a right to occupy has been ruled not subject to

inheritance tax. *See Shipley Est.*, 45 Pa. Super. 570 (1910).

Again, all of this is in the absence of a contrary intention appearing in the instrument.

In looking closely at the Will, the court notes that some of its expressions more esemble the gift of a life estate and others more the gift of the personal privilege of a right f occupancy. The Respondent:

> shall have the personal right (*right of occupancy*) to use and occupy (*equally indicative and thus of no import*) . . . rent free (*more like a life estate*) for the remainder of her life (*used in both contexts*) or such time as she vacates the property and takes up residence elsewhere, whichever event shall occur first (*right of occupancy*).

(Will, 5/8/14, at 1-2.)

The next paragraph continues:

> Such right (*right of occupancy*) shall be subject to the condition that JULIA KOLIOPULOS shall be responsible for the timely payment of utilities (*true for both life tenants and holders of right to occupy*). However . . . my daughter, PAMELA MAY MILLER, shall be responsible for the timely payment of all real estate taxes and homeowners' insurance and repairs and maintenance (*ordinarily borne by a life tenant*).

(*Id.* at 2.)

Decedent's Will describes in his own words his intention to convey a "personal right" to Ms. Koliopulos. Also significant is that the decedent relieved his good friend of paying for anything other than utilities, that is to

say, what was necessary for her personal consumption. On the other hand, he was explicit that the Respondent would not have any right of reimbursement for any expenditure that she made herself to the property. (*Id.*)

As mentioned, resort to other cases is only of modest utility in this area. However, this case is very much like *Betz Est.*, 57 Lanc. L.R. 315, 318 (1960). There, the testator said that if his son "desires to occupy my farm situated in Lancaster Township on the Wabank Road, whereon he now resides, he shall have the privilege to do so." The court opined "[t]hus, he specifically described the petitioner's interest in the farm as a 'privilege' of occupancy, effective only if he (his son Jacob) so desires. It has been held that a gift of this nature is only a privilege or license (of occupancy) and not the devise of a life estate." *Id.* (*citing Shipley's Est.*, 45 Pa. Super. 570 (1910)). Similarly, a direction that testator's wife "shall have the right to use and occupy for and during the full term of her natural life, free of all charges for taxes, repairs and other costs of maintenance," was determined to be a grant of no more than a privilege to use and occupy the property in question, in *duPont Est.*, 13 Ches. Co. Rep. 302 (1965). *But see, La Rosa v. McVicker*, 185 Pa. Super. 95, 137 A.2d 861 (1958).

From a careful reading and review of the provisions of the Will of the decedent as a whole, and the other evidence adduced at the hearing, it is clear to this court that the decedent's intention was that the real estate owned by him at the time of his death, while devised to his daughter, remain available to his good friend for as long as she wished to reside there, or for her life, as the case might be.

## When A Gift is Violative of Public Policy

Petitioner also argues that the court should not give effect to the occupation of the property by Ms. Koliopulos because the structure to which her apartment is attached violates the local building codes. Additionally, neither decedent nor she received a certificate of occupancy for the apartment where Respondent resides. Given the deteriorated condition of the mushroom building wall to which Ms. Koliopulos' apartment abuts, Petitioner doubts that any certificate of occupancy could be acquired. From the evidence of record, Petitioner urges that the property cannot be repaired without demolishing the apartment and that any right of occupancy under the Will is unenforceable as against public policy.

The public policy of a state is established (1) by the constitution and laws of the state, or (2) by the judicial decisions of the courts of the state, or (3) by general consent. General consent is usually manifested in numbers (1) or (2). For example, there is a general consent that contracts entered into for the purpose of rewarding criminal acts where effectuating some illegal object are void and the court will strike such contracts down. A bequest for the purpose of financing the forcible overthrow of the government would likewise be proscribed by general consent and by the courts. Ordinarily, the decision as to whether any acts or contracts or bequests or any other private arrangements contravene the recognized interests of society rests on the determination whether they conflict with the expressions or clear implications of the state's organic law or its statutes or judicial decisions. *Mohler's Est.*, 343 Pa. 299, 22 A.2d 680 (1941). Under these principles, it has been

held that a direction in a will to the executors that they destroy the dogs that the testatrix owned at her death is invalid as against public policy. *Capers' Est.*, 34 D. & C. 2d. 121 (1964). A provision in a will that the testatrix's jewelry of considerable value be buried with her was void as contrary to public policy in that it would invite desecration of the grave. *Meksras' Est.*, 63 D. & C. 2d. 371 (1974). A bequest intended to induce a separation or divorce is void as against public policy. *Morton's Est.*, 13 D. & C. 2d. 148 (1957).

Petitioner relies on a number of decisions in support of her argument that the provision in question in favor of Ms. Koliopulos contravenes statute or public policy, including *Borden v. Baldwin*, 444 Pa. 577, 584, 281 A.2d 892 (1971). However, that case, like many in this area relied upon by Petitioner, *see e.g., Wanamakers' Est.*, 335 Pa. 241, 6 A.2d 852 (1939), simply struck a provision for violating the rule against perpetuities. The provision in *Devlin's Trust Est.*, 284 Pa. 11, 130 A.2d 238 (1925) that conditioned a bequest upon one's remaining an adherent to a particular church was declared to be void as against public policy. The will in *Manners v. Phila. Library Co.*, 93 Pa. 165 (1880) contained the testamentary direction to publish illegal or immoral works and suffered the same fate. All of these cases may be distinguished from the present one because each testamentary direction was inherently objectionable. They were *malum in se*, unlawful in themselves and void on their face.

Such is not the case with the gift of a right of occupancy to Ms. Koliopulos. The bequest itself offends no social policy and Petitioner has given no authority to the

contrary. This is not a municipal enforcement action, and the Township is not a party here. The decedent certainly had the right to give this privilege to his good friend.

Proper Administration and Distribution of Estate

Respondent opposes Petitioner's request for a forced sale regardless of the building's condition because, examining the Will as a whole, such action would be violative of the intent of the Testator, citing to *Klingerman Est.*, 81 D. & C. 397 (1952). Respondent also argues that the provision in the PEF Code which forms the basis for Petitioner's request for a judicial sale under these circumstances, 20 Pa. C.S. §3353, is unavailing. According to Ms. Koliopulos, a sale is only authorized under §3353 in instances where the governing instrument denies the personal representative the power of sale or where the court finds that such sale is desirable for the administration and distribution of the estate.

In *Klingerman, supra,* the executor filed a petition to sell a decedent's house under the predecessor statute to 20 Pa. C.S.A. §3353. The house was occupied by the testator's widow. It was alleged that the house was in significant disrepair and that funds were needed to pay estate expenses and costs. The court determined from the will that the widow had a right of occupancy only but nonetheless denied the petition to sell with the following observation:

The sole inquiry in these proceedings, in our opinion . . . is to decide the most desirable procedure for the proper administration and distribution of the estate, keeping in mind, however, the context of the will as a whole

and the true intent of testator by the words used in the will. It is a matter of common knowledge that when the contents of a will are clear that the court need not resort to rules of construction. It is likewise a matter of well-established law that in order to determine the true intent of testator, the will as a whole must be considered.

*Klingerman Est.*, at 399-402.

The court also noted:

We believe that because of the widow's advanced years, and knowing how persons of this age are reluctant to leave their home and take up a new abode, that to sell this property and dispossess this widow would not be carrying out the wishes of testator as expressed in his will. Likewise, there is no immediate compelling reason for such action.

*Id.*

In fact, the executor was ordered to take out a mortgage to pay for certain administrative costs, bequests and minor repairs to the structure. *Id.*

The court agrees with the Petitioner only to this extent: all of us live under the law, and the day may come when, for you or I or any of us, an enforcement action may arrive and change the circumstances under which we currently dwell. But what is before the court is whether to grant the Executrix's administrative request which would effectively dispossess the Respondent and deprive her of her gift. This the court will not do based on the interpretation of the decedent's will and the circumstances of this case.

## CONCLUSIONS OF LAW

1. Testator by will conferred on Respondent Koliopulos the personal right to occupy the real estate at 448 Calvary Rd. rent free for the remainder of her life or until such time as she resided elsewhere; this was not a life estate.

2. This testamentary gift was within the right of the testator to make.

3. The grant of this personal right of occupancy contravenes no positive rule of law nor is it against public policy.

4. No part of the proper administration and distribution of this estate require the sale of the property at the present time.