## Callen *versus* Hilty.

Where an owner of a farm agrees with another to permit him to occupy and clear a part of the woodland of the same, during a certain period, the owner reserving the use of the timber on the clearing, except what may be necessary for the buildings and rails for the premises, and fire-wood of the occupant, the owner is entitled to the *timber* cut on the part cleared.

ERROR to the Common Pleas of *Westmoreland county.*

This was a suit by Hilty *vs.* Callen. Hilty was Callen's tenant, under an agreement in writing, in which Callen covenanted to find the boards, nails, and laths, for a house. Callen having furnished but part of the boards, and no nails or laths, Hilty brought this

[Callen *v.* Hilty.]

suit, and declared in covenant to recover damages from Callen, the landlord, for non-performance of this stipulation.

Defendant pleaded set-off, and, amongst other things, gave evidence of plaintiff's having cut trees, and sold the timber off the land leased, and of his not having fulfilled his agreement in other particulars.

The agreement was under seal. It witnessed, that the said Callen doth let or give the said Hilty privilege of living four years on his farm, from the first day of April next. The said Hilty is bound to clear thirty-five acres of land on said farm, and build the fences six rails high, and stake and rider said fences: and the said Hilty is to put such buildings on said farm as may suit his own convenience—Callen to furnish the boards for house, and also nails and lath for a clapboard roof—twenty acres of the land to be cleared on the east side of the Beaver Run, and the balance on the west side of said run; four acres of the said clearing to be put in grass (or meadow); one-third of the plough-land not to be seeded when the said Hilty quits the possession on the first day of April, 1848. The said Hilty is not to join fences with the said Callen at any part of the said lease. *Callen reserves the use of all the timber, except what may be necessary for the buildings, rails, and fire-wood of the said Hilty.*

KNOX, J., charged, *inter alia,* that when there was a failure on the part of either party, the jury should estimate the damage, and set off one against the other, and return a verdict for the difference in favor of whichever was entitled.

2d. That the reservation of the timber in the article in favor of the defendant, did not extend to the timber on the land which plaintiff cleared; but as to that he could do what he pleased, either burn it or take it off and use it for his own purposes.

Defendant's counsel excepted, and error was assigned as to the part of the charge relating to the timber.

The case was argued by *Burrell,* for plaintiff in error; and by *Foster,* for defendant.

The opinion of the court was delivered, Oct. 14th, by

COULTER, J.—A lease is properly a conveyance of any lands or tenements in consideration of rent or other annual recompense, though, doubtless, a return or recompense in gross would be sufficient. This conveyance is for life or for years, or at will; and during the continuance of the term, the tenant is entitled to the exclusive possession and enjoyment of the premises, so that he commits no waste. But the law, resulting from the relation of landlord and tenant, may be modified by the particular covenants in the lease entered into by the parties; and a mere license to live

[Callen *v.* Hilty.]

upon land, and to do certain acts thereon, may be granted without creating the relation of landlord and tenant, or giving any other rights to the occupant than those conceded or granted by the license; and of this character would seem to be the relation subsisting between the plaintiff and defendant, according to their article of agreement. There is no grant or conveyance of the farm, or of any particular part of it, for any time. But, in the language of the agreement itself, Callen doth let or give the said Hilty privilege of living on his farm for four years from the first day of April then next. The said Hilty is bound to clear thirty-five acres, and fence what he clears; and Hilty to put up such buildings as suits his own convenience; Callen to furnish the boards for the house, and nails and laths for a clapboard roof. Every agreement is to be interpreted and construed with reference to the circumstances under which the parties contract. Callen had a large tract of land, on which he resided himself; and wishing to have more land cleared, he agreed with Hilty to clear thirty-five acres at a place specified, and agreed to let him live thereon four years, and help him to build a house. The object of Callen was to have his land cleared, and Hilty was to get a home for four years, with assistance in building a house, and what he could make in that time off the land which he cleared. It was a contract in which the respective rights of the parties and their duties was set out, and it related to the thirty-five acres to be cleared, and cannot, in any sense, be construed into a lease of the whole farm, nor to create the relation of landlord and tenant between the parties as to any part of it. Callen reserves the use of all the timber, except what may be necessary for the buildings, rails, and fire-wood of Hilty. Hilty cut off the timber and sold it for saw-logs; and it is contended that he had a right to do so, as tenant, because he might have burnt it on the ground, in log-heaps, and that Callen had no right to enter on his tenant to take any of the timber away. But this cannot be allowed without doing violence to the agreement, and the well-known customs of the country. When land is cleared, the first thing is to make rails for fencing it out of the timber that is cut down, and, if a house is to be built, to build it of the logs on the clearing, and to convert the tops and the branches of crooked trees into fire-wood. And when Callen reserved the use of all the timber except what was required to fence the ground, to build the house, and to make fire-wood, it was obviously intended of the timber cut on the cleared land. Why should Callen reserve the *use* of all the timber on his own land, still standing and growing there. A man does not use standing and growing trees, but he uses those which are felled. It is impossible to suppose that farmers, well acquainted with woodcraft and the husbandry of good timber, meant any thing else than that Hilty should fence the cleared land from the timber cut on it, build his cabin from the trees cut on the thirty-five acres, and get his fire-wood

[Callen *v.* Hilty.]

from the tops and refuse trees ; and that Callen should have the use of all the rest.    It appears from the evidence that Hilty took forty logs to the saw-mill, many of them cherry, some of them walnut, and others good oak logs.    Such logs ought to be worth one dollar per stick, at almost any place in Westmoreland county, except on the mountains.    He did not clear all the land by nine or ten acres, and it appears by the testimony, that it was worth more with the timber on it, than it would be after it was taken off.    This fact gives an unerring clue to the intent of the parties.    In many parts of the country, the timber on land is worth more than the land after it is stripped.    And when the owner reserves all the timber for his own use, except what is used for fencing, building the cabin, and for fire-wood, we are impelled to the conclusion, indicated as well by the words of the agreement as the concomitant circumstances and the nature of the contract, that Callen was entitled to the timber cut on the land cleared by Hilty, except that used for fencing, building the cabin, and fire-wood.    If Callen had refused to take away the timber, it would be a different case.    But there was no danger of that, as it appears that saw-mills were close at hand.    Callen, not having conveyed away the land by lease, but having merely granted a license and privilege to Hilty, had the right of entry to take away the logs according to contract.

The judgment must therefore be reversed and a *venire de novo* awarded.