## Shipley's Estate.

*Taxation—Collateral inheritance tax—License to use real estate—Life estate—Wills.*

1. Where a testator directs that his sister shall have the right to retain the use of a house "free of rent as a family residence as long as she may live and may wish to do so," but if she may wish to remove from it to another house, the same may be provided for her out of the funds of the estate so that it does not exceed in value the one removed from, the sister takes merely a personal license or privilege to occupy the house specified, or another at her pleasure, and not an estate therein, from which the commonwealth may collect a collateral inheritance tax.

2. A license in respect to real estate is defined to be an authority to do a particular act or series of acts on another's land without possessing any estate therein. It is founded on personal confidence and is not assignable or within the statute of frauds.

Argued Nov. 25, 1910. Appeal, No. 268, Oct. T., 1909, by the Commonwealth, from decree of O. C. Chester Co., sustaining appeal from collateral tax appraisement in estate of Samuel R. Shipley, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Appeal from collateral tax appraisement.

The court in an opinion by BUTLER, J., sustained the appeal on the ground that the provision in the testator's will for his sister, quoted in the opinion of the Superior Court, gave the sister merely a license to use the testator's house, and not an estate therein.

*Error assigned* was in sustaining the appeal.

*John R. Scholl*, for appellant.—Provisions similar to the one in question have repeatedly been construed as vesting "estates in land" in the beneficiary and not merely licenses or privileges: Wusthoff v. Dracourt, 3 Watts, 240; Kennedy's App., 81* Pa. 163; Ringrose v. Ringrose, 170 Pa. 593; Wingett v. Bell, 14 Pa. Superior Ct. 558; Bell v.

Fulton, 1 Sadler, 200; France's Est., 75 Pa. 220; Armstrong v. Michener, 160 Pa. 21; Nevins's Est., 192 Pa. 258; Clough v. Clough, 71 N. H. 412 (52 Atl. Repr. 449).

*George S. Munson*, with him *H. Gordon McCouch*, for appellee.—In two other cases in Pennsylvania, language substantially like that used by Mr. Shipley was held to create a license merely in the beneficiary, and not an estate: Calhoun v. Jester, 11 Pa. 474; Callen v. Hilty, 14 Pa. 286.

OPINION BY HEAD, J., March 3, 1911:

The sole question raised by this appeal turns upon the construction to be given to the following clause of the will of Samuel R. Shipley, deceased, to wit:

"Fifteenth:—I will and direct that my sister, Catharine M. Shipley, shall have the right to retain the use of my house at 2128 DeLancey street in the city of Philadelphia free of rent as a family residence as long as she may live and may wish to do so. Should she conclude that this house is too large, or should she for any reason wish to remove from it to another, the value of which shall not exceed the value of the one thus removed from, she may have the right to do so, and in that event my said executors and trustees shall have the authority to provide for her out of the funds of my estate such a residence free of rent as she may select. My object in this provision is to furnish to my sister a convenient residence and home for and during the term of her natural life. All taxes, repairs and expenses of maintaining such residence, either at 2128 DeLancey street or any other house which may be selected as above, shall be paid by my executors and trustees out of the income of my estate."

If Catharine M. Shipley, under the above-recited provision, took an estate for life in the premises described as 2128 DeLancey street, then the commonwealth was entitled to the collateral tax on the value of the property. If, on the other hand, said provision conferred upon her

but a personal license or privilege to occupy said house, or another at her pleasure, then the learned court below was right in denying the commonwealth's claim for such tax.

The language used by the testator in the opening sentence of the provision quoted clearly indicates that he did not intend by his will to create any new estate or interest in the DeLancey street house in favor of his sister. "I will and direct that my sister shall have the right to retain the use of my house," etc. She was therefore but to continue to enjoy after the testator's death that which she had during his lifetime, and it is not contended that there existed in her any estate of any kind in the property prior to the death of the testator. It is also clear that there was no intention to incumber the right or privilege thus conferred upon her with any of the incidental obligations that would attach to or flow from the creation of a life estate in her favor. It is expressly provided that the burden of taxes, repairs and expenses of maintenance, ordinarily to be borne by a life tenant, should be paid and discharged out of the revenues of the estate. Moreover, at her election, the will clearly gave to the beneficiary named the privilege of exercising in some other property the same right which she would primarily exercise in the DeLancey street house.

In the event of such election, what would be the nature of her interest in the second property to be provided by the executors? Manifestly it would be the same in character and extent as that which she primarily had in the DeLancey street house, but it is not and it could not well be contended that it was the testator's intention to give her a life estate in two properties. If therefore, on the death of the testator, she took a life estate in the DeLancey street house, and if upon her election to remove to another she would thereby acquire a life estate in it, it would seem to follow that the life estate, which it is claimed she had in the first property, must be of an ambulatory nature so that it could be shifted by her from the one property

to the other in case she chose to exercise the right of election clearly conferred upon her by the will.

We are unable to reach the conclusion that such a construction of the clause quoted is the true one. On the other hand, if we hold that the testator intended to confer upon his sister but a license or personal privilege to occupy the house designated, or another to be selected by her at her pleasure, we meet every requirement of the language of the will, and, as it seems to us, give effect to the intention of the testator.

In 5 Words and Phrases, Judicially Defined, 4133, "A license in respect to real estate is defined to be an authority to do a particular act or series of acts on another's land without possessing any estate therein. . . . It is founded on personal confidence and is not assignable or within the statute of frauds." The numerous cases there cited show that this definition is most widely, if not universally, accepted, and it has been expressly adopted in our own state: Baldwin v. Taylor, 166 Pa. 507. In Calhoun v. Jester, 11 Pa. 474, the following provision of a will was before the court for interpretation: "I leave unto my son John's children, my plantation &c.; providing that my son John have the privilege of living on the place with his children during his life." GIBSON, C. J., construing the proviso quoted, said: "The direction, that the testator's son John should have the privilege of living on the place with the children during his life, gave him, not an estate, but a license. Had he taken an estate, it would have been liable to judgment and execution by his creditors—the very thing, perhaps, which the testator designed to prevent." We are not able to perceive any substantial distinction between the language of the will there construed and that now before us. So in Callen v. Hilty, 14 Pa. 286, the language of the agreement which fixed the relations of the parties was the following: "That the said Callen doth let or give the said Hilty privilege of living four years on his farm, from the first day of April next." It was held that no relation of landlord and tenant was

created by that instrument and that no estate of any kind vested in Hilty, the court saying: "A mere license to live upon land, and to do certain acts thereon, may be granted without creating the relation of landlord and tenant, or giving any other rights to the occupant than those conceded or granted by the license; and of this character would seem to be the relation subsisting between the plaintiff and defendant, according to their article of agreement. There is no grant or conveyance of the farm, or of any particular part of it, for any time."

Nor are we able to perceive that we should be led to the other conclusion by any controlling force in the cases cited and relied on by the able counsel for appellant. For example, the distinction between the present case and Wusthoff v. Dracourt, 3 Watts, 240, we think is exhibited in the following sentence from the opinion of ROGERS, J.: "The case at bar is not a legacy but a devise of a freehold during life, and the enjoyment does not depend upon either an express or implied condition that she shall continue to reside in the house." As we have already seen, we do not think it could be fairly contended under the will now before us that Catharine M. Shipley could retain a life estate in the house in DeLancey street after she had exercised the privilege given her by the testator of occupying another to be provided by his executors. And the same consideration shows that Ringrose v. Ringrose, 170 Pa. 593, cannot be regarded as decisive of the question before us. We find nothing in Kennedy's Appeal, 81* Pa. 163, that sheds any light on the present controversy.

After an attentive examination of the entire section of the testator's will, we are of the opinion that the learned court below was right in holding that Catharine M. Shipley had, not a life estate in the DeLancey street property, but a mere license or personal privilege to continue the occupancy of it rent free after the death of the testator, as she had occupied it during his lifetime.

Judgment affirmed.