## Geary's Estate

382

*Samuel L. Gilson,* for petitioners.
*Carpenter & Carpenter,* for respondent.

HIPPLE, P. J., January 14, 1946.—This matter comes before the court on the petition of the executors under the last will and testament of B. F. Geary, deceased; Helen E. Gilson, a beneficiary and residuary legatee,

Mary Frances Wagner, granddaughter of testator, a remainder woman, and Lock Haven Trust Company, guardian of the Estates of Emily E. McCloskey and William A. McCloskey, beneficiaries and residuary legatees, praying for a declaratory judgment with respect to decedent's will and an answer filed thereto by Louise A. Geary, widow of testator.

Various adverse claims have arisen between the parties regarding the interpretation of the will of decedent, the rights of beneficiaries, and the duties of fiduciaries and trustees named therein, whereby an actual controversy exists which brings the proceeding within the Declaratory Judgment Act of June 18, 1923, P. L. 840, sec. 4, 12 PS §834.

B. F. Geary died April 15, 1940. His last will and testament, dated November 30, 1939, was probated and recorded in Clinton County, Pennsylvania, in Will Book "M", page 342. He named Samuel L. Gilson and Louise A. Geary as executor and executrix, and The First National Bank of Lock Haven, and Samuel L. Gilson as trustees of trusts created thereunder. Letters testamentary were duly issued and the executors proceeded with the administration of the estate. Mr. Geary had previously been married to Allison W. Geary, who died July 14, 1926, and Louise A. Geary, the present widow, was married on November 10, 1928, to Mr. Geary. The maiden name of Louise A. Geary was Louise M. Alber, and prior to this marriage Miss Alber and Mr. Geary entered into a prenuptial agreement dated September 22, 1928, a copy being attached to and made part of testator's last will and testament. The prenuptial agreement sets forth that Mr. Geary had disclosed to Miss Alber the amount of his estate as accurately as could be determined, which included the value of property bequeathed to him by his former wife, Allison W. Geary, under the terms of her last will and testament probated and recorded in Clinton County, Penna., in Will Book "I", page 440, which was of the value of ap-

proximately $70,000, and both parties agreed that upon the death of Mr. Geary all of the property owned by him which became vested in him under the last will and testament of his deceased wife should, upon his death, descend to and become vested in the children of Mr. Geary, viz., Helen E. Gilson and Dora I. McCloskey; that upon the death of Mr. Geary and the payment of his debts and funeral expenses, there should be first deducted from his estate the sum of $70,000, to become the property in equal shares of Helen E. Gilson and Dora I. McCloskey, under and subject to such provisions, limitations and trusts as Mr. Geary might provide in his will, and that the remainder of the estate should then be divided equally between Louise A. Geary, Helen E. Gilson and Dora I. McCloskey, each receiving the one third part thereof, but Mr. Geary reserved the right to dispose of the interests provided in this agreement by a last will and testament, to create such trusts as he might deem advisable, provide for the payment of income to beneficiaries and for the reversion and final disposition of the principal sum.

In his will, after certain specific bequests of household goods and directing the cancellation of certain indebtedness, testator declared that he had received from the estate of his wife, Allison W. Geary, 67 shares of the capital stock of the First National Bank of Lock Haven of the par value of $100, which were later converted into 335 shares of stock of the par value of $20; 27 shares of the capital stock of Lock Haven Trust Company, a dwelling house and residence at 317 West Main Street, Lock Haven, Pa., and a note executed by testator to the order of his deceased wife in the sum of $16,200, representing money due and owing his deceased wife by testator at the time of her death. He thereupon directed his executors to deliver to the First National Bank of Lock Haven, Pa., and Samuel L. Gilson, as trustees, the certificates representing the capital stock of the First National Bank of Lock Haven,

Pa., and Lock Haven Trust Company, and to pay to them the sum of $16,200 in cash out of the residue of his estate, together with the proceeds of the sale of his residence and dwelling house at 317 West Main Street, Lock Haven, Pa., bequeathing and devising these assets to the trustees to be invested in legal securities for trust funds, and directing that the trust should be divided into two equal parts: (1) To pay for the use of his daughter, Helen. E. Gilson, of Erie, Pa., out of the accumulated principal and interest the sum of $300 per month upon the first day of each month from and after his decease, as long as the fund should last or until her death, with remainder over to his granddaughter, Mary Frances Gilson, now Mary Frances Wagner, upon the death of Helen E. Gilson, if any money remained in the fund, and the other half to be held for the benefit of his two grandchildren, William A. McCloskey and Emily E. McCloskey, testator's daughter, Dora I. McCloskey having predeceased testator, to be divided equally between them and out of the combined principal and interest therefrom trustees were directed to pay to each the sum of $50 per month from the time of testator's death until they severally arrived at the age of 35 years, at which time the principal was to be paid to them, with remainder over in event of the death of the grandchildren before arriving at the age of 35 years, without leaving lawful issue.

In the seventh paragraph of his will, testator gave to his wife, Louise A. Geary, without charge the use and occupancy of his residence and dwelling house at 317 West Main Street, for the period of two years from the date of his death, directing that the taxes, insurance and cost of repairs thereon should be paid out of "my estate" during that period, but that if a satisfactory price could be obtained for this real estate by his executors within the period of two years, then the executors might sell the same. In such event they were directed to secure some other suitable home, satisfac-

tory to his wife, Louise A. Geary, the cost thereof to be borne by "my estate".

Testator then directed his executors to convert the balance of his estate, viz., that portion which was not received from his wife, Allison W. Geary, into cash as soon as possible after his decease, and from the moneys so realized to pay to the First National Bank of Lock Haven and Samuel L. Gilson, trustees, $16,200, representing his indebtedness to the estate of his deceased wife.

In paragraph nine he created a trust for the benefit of his wife, Louise A. Geary, naming the First National Bank of Lock Haven, Pa., and Samuel L. Gilson as trustee, and bequeathed to these trustees the sum of $50,000, to be invested and reinvested in good and legal securities, directing the trustees to "pay the net income thereof to my beloved wife, Louise A. Geary, together with the sum of One Hundred ($100) Dollars per month, to be paid out of the principal of such trust, so long as she lives, or until said fund is entirely exhausted".

In event of the death of Louise A. Geary before the fund was exhausted, testator directed that any amount remaining in the trust should revert to and become a portion of his estate to be divided one half each to his daughter, Helen E. Gilson, and his grandchildren, William A. McCloskey and Emily E. McCloskey, and to become a part of the trust fund created for the benefit of his daughter and grandchildren.

As to the remainder of his estate testator bequeathed the one half thereof to the First National Bank of Lock Haven, Pa., and Samuel L. Gilson, trustees, to be added to and constitute a part of the trust previously created for the benefit of Helen E. Gilson, subject to the limitations and provisions thereof, and the remaining one half he bequeathed to these trustees for the benefit of his grandchildren, William A. McCloskey and Emily E. McCloskey, to be added to the trust created for their

benefit, subject to the limitations and provisions therein set forth.

By paragraph 15, testator stated that if possible, "It is my desire that my Executors hereinafter named settle my estate in full within a period of two years from the date of my death, but this is not mandatory in case conditions arise rendering it inadvisable to do so, and in no case shall my said Executors be chargeable with any loss which may be sustained by my estate by reason of delay in settlement."

At the time of his death the value of the personal and real estate of testator was $130,195.79. The assets of the estate were sufficient for payment of funeral expenses, debts and inheritance taxes and to provide sufficient funds to create the first trust consisting of the assets received from the estate of his first wife in full, and the second trust of $50,000 for the benefit of his wife, Louise A. Geary. These assets consisted chiefly of income-producing securities, practically all of which were dividend-paying stocks. However, shortly after the death of testator the security market declined to a marked degree, which resulted in a large decrease in the value of the securities in the estate, and therefore th executors did not attempt to convert the securities into money until in February 1943. The inventory value of the marketable securities was $68,677.25, and the amount actually received from the sale in February 1943 was $57,616.61, showing a loss of $11,050.64.

During the period from the death of testator until the sale of the securities in February 1943 the interest and dividends therefrom, amounting to $6,627.91 were collected by the executors and of this amount the executors paid to Louise A. Geary as beneficiary of the second trust the sum of $2,739.01, upon the theory, which petitioners now allege was erroneous, that she was entitled to income or interest from the date of testator's death.

Approximately four months after testator's death the executors sold the residence and dwelling house for $6,265.88, which amount was paid to the trustees for the benefit of the first trust, and inasmuch as testator had provided that his wife, Louise A. Geary, should have the use and occupancy of this dwelling house for a period of two years from his death, and in event of the sale thereof during that period, another suitable home should be secured for her, "the cost thereof" to be borne by "my estate", the executors paid to Louise A. Geary the sum of $1,200 to provide a home for herself for the two-year period, having also paid the sum of $19.98 for maintenance of this residence from the time of testator's death to the date it was sold.

The questions to be determined are:

1. Whether the trustees are authorized to pay to Louise A. Geary the monthly instalments of $100 from the trust created for her benefit, commencing as of the date of the death of testator, or whether such payment should start only when the trustees have received more than sufficient funds to establish the first trust set up in the will.

2. Whether Louise A. Geary is entitled to receive from the executors during the administration of the estate any of the income, dividends and interest received by the executors upon the securities retained by them for the purpose of preventing loss to the trusts set up in the will.

3. Whether the executors should pay to the trustees any part of the dividends and interest received by the executors upon unconverted securities and require the trustees to consider such payments as income and not as principal to be applied upon the sum of $16,200, directed to be paid to the first trust.

4. Whether the sum of $3,239.01, paid to Louise A. Geary from dividends and interest during the administration of the estate, was properly paid or should be

repaid by Mrs. Geary or charged against her interest in the estate.

5. Whether the trustees are authorized to pay to Louise A. Geary any moneys at all until she repays to the executors the amount which she received as a portion of the income earned during the administration of the estate.

6. How should the inheritance and estate taxes be apportioned among the trusts set up in the will; and

Lastly, is Louise A. Geary entitled to receive a widow's exemption of $500?

Subsequent to the oral argument, petitioners admitted that Louise A. Geary is entitled to the payment of $500 as her widow's exemption, a claim having been properly made therefor and confirmed absolutely by the court.

Petitioners also admitted that Louise A. Geary is entitled to receive the payment of $100 monthly from the principal fund of the trust created for her benefit from the date of the death of the testator, and that this amount and the payment thereof cannot be delayed or reduced because it was necessary for the executors to retain the securities, and not convert them into cash for a period of almost three years by reason of the market conditions, but they contend that income which was to accompany the payment of $100 monthly from the principal should not be paid by the executors, and in no event until the trustees receive from the executors the funds necessary to set up the trust. On the contrary, respondent, Louise A. Geary, contends she is entitled to a proportionate amount of the income received by the executors during administration, on the theory that unless a contrary intention appears from the will the bequest of the income of a fund or of an annuity includes income or annuity payments from the date of the death of the testator.

Petitioners argue that because there was a loss between the inventory value of the securities at the time

of the death of the testator, and the amount actually received for the same, aggregating $11,050.64, the income received during administration should be applied to the loss in order to make good the principal of the inventory value of the estate, for the benefit of the residuary legatees and therefore that no income received during the administration should be paid to Louise A. Geary.

The will clearly shows it was the intention of testator: (1) To create a trust for the benefit of his daughter and surviving grandchildren from the assets received by him from his first wife, the mother of his daughters and the grandmother of his grandchildren; (2) to create a trust of $50,000 for the benefit of his second wife, Louise A. Geary; and (3) if, and only if, there was any remainder left to add the same to the trust created from the assets received from his first wife. The principal objects of his bounty were his daughter and grandchildren receiving the assets acquired from their mother and grandmother, and his second wife, respondent herein.

Should the income received during administration be retained by the executors for the sole benefit of the residuary estate by applying this income to recoup the loss sustained by the sale of the securities and thus restore the inventory value of the estate as of the date of decedent's death?

The position of the residuary legatees is based upon the theory that because the residuary legacies are in the form of a trust and are to be added to and constitute a part of the first trust in the will, they are therefore entitled to have the intact value of the estate as of the date of the death of testator restored from income received during administration. However, this theory overlooks the fact that there is a distinct difference between specific legacies, whether direct or in trust and residuary legacies. After specifically providing for the first and second trusts testator in paragraph 10 be-

queathed to the trustees "the one half part of the remainder of my estate not hereinbefore disposed of" in trust for the benefit of his daughter, and in paragraph 11 he provided that "the remaining one-half of my estate" should go to the trustees for the benefit of his grandchildren in equal shares, both of the residuary legacies to be added to the trusts created for the benefit of his daughter and grandchildren.

Testator, under the prenuptial agreement with his second wife, could have divided the remainder of his estate, after deduction of debts, administration and funeral expenses and the value of the estate received from his first wife, equally between respondent, his daughter and his two grandchildren, respondent and and the daughter to receive one third, and the grandchildren one third. Paragraph five of the prenuptial agreement specifically provides for this division, and if testator had so provided in his will, respondent would have received a much smaller legacy which she would have been obliged to accept, and the daughter and grandchildren would have received a much greater amount than as residuary legatees. Testator did not make such provision, but took advantage of his right under the prenuptial agreement to dispose of his individual estate by will. In no event could respondent have been required to accept less than one third of his individual estate, and therefore the conclusion is irresistible that because testator provided for a trust fund amounting to approximately $33,000 more than one third of his individual estate, before the payment of taxes, he intended respondent to be the primary object of his bounty subordinating the interests of his children to respondent, except insofar as they might survive respondent before the trust in respondent's favor was entirely exhausted, and except for the remainder, if any, of his estate.

The word "remainder" is synonymous with the word "residue"; each is a technical legal term with a well-

understood and definite meaning signifying all that is left after the gifts specified or designated in a will have been paid or satisfied. The remainder or residue of an estate in testamentary language means whatever is not specifically devised or bequeathed, and the operating effect of a residuary clause is that it disposes of all that which has not in any other portion of the will been specifically devised or bequeathed: Suttner Estate, 348 Pa. 159; Rettew's Estate, 142 Pa. Superior Ct. 335.

In Bentz v. Nieman, 6 Watts 85, in a per curiam opinion the Supreme Court stated (p. 86) :

"A residuary legatee can demand contribution for nothing. He gets but the fragments when- every one else has been served. The costs and charges of settling the estate come out of it in the first instance; then the specific and pecuniary legacies are paid in their order; and finally, if anything is left he gets it, but no one abates for him because his interest is dependent and indefinite."

Garrison's Estate, 17 D. & C. 272, is no authority for the position of the residuary legatees herein. While income in that case was applied to restore a deficiency in *specific legacies,* Judge Gest rejected the argument that the pecuniary interest of residuary legatees is fixed as of the date of the death of the life tenant (in this case the death of testator), and was not affected by the depreciation of the assets thereafter. He held it was the intention of the donor in that case, like that of a testator in his will, upon the termination of certain life estates that charitable institutions should each receive a fixed sum of $50,000 and "it was only the residue that was given to the beneficial heirs who stand in the position of a residuary legatee".

The residuary legatees herein are not the beneficiaries of a specific legacy even though the residuary estate is placed in trust. Therefore, they are not entitled to have the intact value of the residuary estate as of the date of the death of testator made good from in-

come received during administration. Being postponed as residuary legatees to the widow, a pecuniary legatee, they take merely what is left after the first and second trusts are created. As Judge Gest remarked, the residuary legatees may be disappointed in their expectations of receiving a more substantial part of the individual estate of testator but this is a situation that frequently arises when by reason of debts, depreciation of assets and the like, residuary beneficiaries get nothing, being postponed to the pecuniary legatees.

Not having availed himself of the right to distribute his individual estate according to the prenuptial agreement, and clearly evidencing his intention to prefer his wife over the daughter and grandchildren by the creation of a trust in an amount much in excess of one third of his individual estate, the daughter and grandchildren as residuary legatees must take merely what is left of the testator's individual estate, even though the inventory or intact value at the time of testator's death would have produced a residuary estate much in excess of that which the residuary legatees will now receive.

No authority has been cited to us and we have not been able by an independent examination to find any decisions to the effect that the pecuniary interests of residuary legatees are fixed as of the date of the death of testator. It was, of course, unfortunate that the market value of the securities comprising testator's individual estate declined rapidly shortly after his death, but the executors were authorized to use their judgment in the sale of the securities and market conditions being what they were in 1943, with uncertainties arising from the conditions resulting from the World War in which this country was then engaged, the executors were justified in selling the securities in February 1943, even at a loss. The residuary legatees are raising no question as to the wisdom of the execu-

tors in disposing of the securities when they did but they are obliged to take the loss resulting therefrom.

We hold therefore that the income received from the estate during the administration cannot be applied to recoup the loss sustained by the sale of the securities in order to preserve intact, or to the greatest extent possible, the value of decedent's estate as of the date of his death.

Petitioners contend that the right given to respondent in the seventh paragraph of testator's will to use and occupy, without charge, his residence and dwelling house for the period of two years from the date of his death is a devise of an interest subject to inheritance taxes, and that because the residence was sold approximately four months after testator's death and the sum of $1,200 was paid to respondent to provide a home for her for the balance of the two-year period, the payment of this amount, together with the sum of $19.98 for the maintenance of the residence, was a bequest to respondent, subject to inheritance tax.

We cannot agree with this position. Testator did not intend to vest in respondent an estate of any kind in his residence, but intended merely to confer upon her a license or personal privilege to occupy the residence for a period of two years. There was no grant or devise of any interest in the residence which could have been conveyed by respondent or which would have been liable to a judgment and execution by any creditors of respondent, if any there might have been.

In Shipley's Estate, 45 Pa. Superior Ct. 570, this precise question was decided under the terms of a will which were substantially similar to the seventh paragraph of testator's will. In that case the testator willed and directed that his sister should have the right to retain the use of his house in Philadelphia, free of rent, as a family residence as long as she might live and wish to do so, but if she desired to remove from it to another home she would have the right so to do, and the

executors and trustees were directed to provide funds out of the estate for the acquisition of such other residence which she could occupy free of rent. All taxes, repairs and expense of maintenance either of testator's house, or any other residence which the sister might select, were directed to be paid by the executors and trustees out of the income of the estate.

The Commonwealth endeavored to collect a collateral inheritance tax upon the theory that the sister took an estate for life, but it was held that the sister was merely to continue to enjoy after the death of testator that which she had during his lifetime, and that there was no intention to encumber the right or privilege conferred upon her with any of the incidental obligations that would attach to, or flow from the creation of a life estate in her favor. The sister was held to have nothing more than a mere license or personal privilege to continue the occupancy of the residence or of some other property which she might select, rent free, after testator's death. The court cited Baldwin v. Taylor et al., 166 Pa. 507, and Calhoun et al. v. Jester et al., 11 Pa. 474, in which real estate was devised to testator's grandchildren with the direction that the father of the children should "have the privilege of living on the place with his children during his life" and it was held that this gave to the father not an estate but a license.

We conclude that the provision in the seventh paragraph of testator's will is not a devise of an estate in land, nor is the payment of $1,219.98 covering the cost of a home for respondent after the residence property was sold, together with the maintenance of the residence from the date of decedent's death to the date of sale, a bequest, and consequently no inheritance taxes are chargeable against the same.

Respondent claims that she is entitled, in addition to the payment of $100 monthly from the principal fund of the trust created for her benefit from the date of testator's death, to income on the proportionate part

of the assets of the estate which necessarily go to establish the trust of $50,000 from the date of testator's death to the time of distribution, and also to the net income actually produced by the trust fund in the hands of the trustees, that the distribution of $2,-739.01 to her on account of income on the unconverted securities was a proper distribution and that she is under no duty or obligation to return the same. The parties have agreed upon a statement of credits and charges to be used for the purpose of apportioning inheritance taxes and income earned during administration with the same effect as if such credits and charges had been included in a final account, which was confirmed absolutely. Inasmuch as we conclude, as hereinafter stated, that respondent is entitled to income on the proportionate part of the assets of the estate necessary to establish the trust fund of $50,000 the first computation in the stipulation of the parties is used as a basis for distribution. In this computation under the head of Principal Credits is entered the item of the widow's exemption of $500, and noted therein is a statement that the executors distributed to respondent as beneficiary of the second trust fund the sum of $2,-739.01 from income earned during the administration of the estate, which petitioners contend was erroneously made because the income earned during administration should not be apportioned among the trust funds.

Having concluded that the will shows the principal objects of testator's bounty were his daughter and grandchildren receiving the assets acquired from their mother and grandmother, and his second wife, respondent herein, as stated in Jacoby's Estate, 204 Pa. 188:

"It is always important in cases like the present to keep in mind the relation in which the donor stood, or which he assumed toward his object of bounty."

The bequest of the trust of $50,000 to respondent is in effect an annuity. The provision is that this sum was to be invested and reinvested in good and legal

securities, and the trustees were directed to pay the net income over to respondent, together with the sum of $100 monthly out of the principal of the trust as long as respondent lived, or until the fund was entirely exhausted.

In Commonwealth v. Beisel, 338 Pa. 519, it is held (p. 521) :

" 'Annuity' is a term somewhat loosely used in financial and legal nomenclature and is perhaps incapable of exact definition. Generally speaking, it designates a right—bequeathed, donated or purchased—to receive fixed, periodical payments, either for life or a number of years."

In a footnote it is stated:

"To constitute an 'annuity' it is not necessary that the payments be annual."

This question is decided in Estate of William Band, Jr., 103 Pa. Superior Ct. 553. Three trusts were there set up, the income from which was to be paid to named individuals with remainders over. During the administration of the estate there was an accumulation of income which the auditing judge awarded to the person who was to receive the income of the residuary estate. Upon exceptions the court en banc divided the income between the three trusts in the proportion of the principal sums thereof. The Superior Court, in affirming such distribution, stated that the testator had his mind set on income which did not mean interest, that the income should be divided between the several trusts which stood in the same position, except that the first two trusts were definite in amount, while the third was a residuary trust, and that the parties entitled to the trusts need not await transfer of the funds to the trustees, but might receive the income from the executors.

To the same effect is Brown's Estate, 190 Pa. 464, holding that there can be no question as to the rule that where the interest or income of a fund is bequeathed to one person for life with remainder over of the prin-

cipal to another, the legatee for life is entitled the same as an annuitant to interest from the death of the testator, unless there is something in the will to control it otherwise, and this is true of interest on the residue or aliquot part of it, as of the interest on a fund of a specific amount. See also Flickwir's Estate, 136 Pa. 374, which is cited in Eichelberger's Estate, 170 Pa. 242, in which one question was whether the beneficiaries of certain funds directed to be invested under order of the Orphans' Court of York County, or in securities to be approved by the court, were entitled to interest on the fund respectively from the date of decedent's death. The fund consisted of interest-bearing securities and the interest actually received was more than sufficient to pay the annuities to the several legatees. The Supreme Court held that the failure of the executors to invest the various principal sums under the direction of the Orphans' Court of York County could not deprive the annuitants of the benefit of the well-established rule that the gift of an annuity commences to run at the death of the testator.

The rule laid down in the Appeal of Pennsylvania Company, etc., 41 L. I. 26, has not been altered. In that case testator bequeathed to the Pennsylvania Company for Insurances on Lives and Granting Annuities $120,000 as soon as the same could be conveniently raised and paid out of his estate by his executors, in trust to pay one third of the income to his wife during her life and subject to that provision to pay and divide the income equally between his two daughters, with remainder over upon their deaths. The Pennsylvania Company took the position before the auditor that the wife and daughters were not entitled to the income upon the $120,000 legacy during the year immediately succeeding the testator's death, but that this income was to be regarded as principal for the purpose of accumulation to the residuary estate. This contention was overruled by the auditor following Hilyard's Es-

tate, 5 W. & S. 30, and Eyre v. Golding, 5 Binn. 472, who awarded to the wife and daughters certain income received by the executors during the year following testator's death. The auditor observed "in the will before us no other intent than that the income legacies for the first year should bear interest appears to be manifested unless it be collectable from the phrase, 'as soon as the same can be conveniently raised'". Exceptions to the auditor's report having been dismissed by the orphans' court, an appeal to the Supreme Court followed, the exceptant taking the position that the legacy was not to be paid immediately, but as soon as the same could conveniently be paid out of the estate by the executor; that the executor was not required to pay the income, that duty devolving upon the trustee, that the trustee could not pay it until he earned it and he could only earn it if the legacy was paid to him immediately upon testator's death. The question was put to the Supreme Court in the following manner:

"Are the appellees to receive interest *earned by investments* which were to be sold, before the trustee, . . . could receive a dollar of the principal which was to produce the income that was given to them?"

The Supreme Court dismissed the appeal in a per curiam opinion, and affirmed the decree of the orphans' court awarding the income received during the year following decedent's death to the wife and daughters.

The Fiduciaries Act of June 7, 1917, P. L. 447, sec. 21, 20 PS §633, as amended by the Act of June 24, 1939, P. L. 714, provides that unless otherwise provided in a will, on all pecuniary legacies, whether bequeathed directly or in trust, interest at the legal rate or at the rate earned by the particular estate out of which such legacies are payable, whichever shall be less, shall begin to run at the expiration of one year from the death of the testator, with the provision however, that "where a pecuniary legacy is bequeathed to or for the use of the widow of the testator or any

child or descendant of the testator . . . interest at the legal rate shall, unless a contrary intention appear by his will, begin to run from the date of the death of the testator".

In Steubner's Estate, 16 D. & C. 309, where certain pecuniary legacies were bequeathed in trust, and where the legatees were not within the preferred class enumerated in the Fiduciaries Act above cited, the interest or income upon securities in the estate was not allotted to the beneficiaries from the date of testator's death, but only from the expiration of one year thereafter. This was decided on December 31, 1931, 15 days following the opinion of the Superior Court in Band's Estate, supra. Upon a petition for a reargument Judge Gest held on May 27, 1932, 16 D. & C. 754, that the opinion in Band's Estate was not known either to counsel or to the court when the matter was disposed of, and that inasmuch as the Superior Court had arrived at a conclusion contrary to that of the lower court in its first adjudication the exceptions to the original adjudication should be sustained. The record was therefore remitted in order that distribution be awarded in accordance with the decision in Band's Estate, which allotted to the beneficiaries of the several trusts the income received from the date of testator's death.

Band's Estate was followed in Jackson's Estate, 318 Pa. 256, in which it was held that where testatrix after bequeathing pecuniary legacies, payable directly to the legatee, made certain bequests in trust which under the will bore income and then bequeathed the residuary trust estate to other legatees, the legatees whose legacies were bequeathed in trust were entitled with the residuary trust legatees to a pro rata share of the income of the estate from the date of testator's death to the time of distribution.

Respondent is in the preferred class under the Fiduciaries Act of June 24, 1939, supra. She is testator's widow, and the evident intention of testator, as herein-

before stated, was to first provide for his daughter and grandchildren from the assets received from his first wife, and then to set up a trust fund of $50,000 for her benefit. While there is no express provision that the payment of $100 monthly from the principal or corpus of the trust fund should commence at the date of testator's death, yet petitioners admit that respondent is entitled to this payment and that it could not be delayed or reduced because under market conditions it was necessary to retain the securities of the estate for a period of almost three years. Can it be said that testator intended that his wife should receive only $100 monthly, or $1,200 yearly from the trust fund because he permitted his executors in their administration to retain the securities if conditions arose which rendered it inadvisable to sell them, and settle the estate within two years from his death? This would not be a reasonable construction of the will nor would it carry out testator's intention to provide for his wife. Respondent should receive not only the monthly payments from principal, but also the proportionate share of the income from the securities during administration, and the payment of this income can be made by the executors before the trust is fully established, or the entire amount thereof paid to the trustees. Therefore, the payment of $2,739.01 by the executors to respondent out of interest and dividends received prior to the sale of securities was proper and respondent is entitled to the income from the proportionate part of the assets of the estate which are necessary to establish the trust fund of $50,000 in her favor, from the date of testator's death. It follows therefore that the trustees are authorized to pay her the income and monthly payments from the trust fund without any repayment by her to the executors of the moneys received by her as a portion of the income earned during administration.

The total amount paid to respondent as a part of dividends and interest received by the executors during

administration was $3,239.01. At the time of this payment the widow's exemption of $500 was not taken into account, but in the stipulation the sum of $500 is credited as a principal credit, leaving a balance of $2,-739.01 as the amount paid from income during administration.

The executors paid a Federal estate tax of $3,821.02, and the question is raised as to the proper apportionment of this tax under the Apportionment Act of July 2, 1937, P. L. 2762, 20 PS §844. The relevant portion of this act is as follows:

"Whenever it appears upon any accounting or in any appropriate action or proceeding that an executor . . . has paid an estate tax . . . under the provisions of any estate tax law of the United States heretofore or hereafter enacted upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, except in a case where a testator otherwise directs in his will, shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues. Such proration shall be made by the orphans' court in the proportion as near as may be that the value of the property, interest or benefit of each such person bears to the total value of the property, interests and benefits received by all such persons interested in the estate, except that, in making such proration, allowances shall be made for any exemptions granted by the act imposing the tax, and for any deductions allowed by such act, for the purpose of arriving at the value of the net estate, and except that, in cases where a trust is created or other provision made whereby any person is given an interest in income or an estate for years or for life, or other temporary interest in any property or fund, the tax on both such temporary interest and on the remainder thereafter shall be charged against and be paid out of the corpus

of such property or fund, without apportionment between remainders and temporary estates . . . the term 'persons interested in the estate' shall, with respect to both State and Federal taxes, include all persons who may be entitled to receive . . . any property or interest which is required to be included in the gross estate of a decedent . . . taxable under any of the aforementioned laws, providing for the levy or assessment of estate taxes.

"The tax shall be paid by the executor, administrator, or other fiduciary as such out of the estate before its distribution."

Petitioners argue that the exemption of $40,000 allowed by the Federal Government in determining the value of the estate for the purpose of ascertaining the Federal Estate Tax, should not be credited to the three trusts generally, but should be applied only to the first trust composed of the assets received by testator from the estate of his deceased wife. Their position is that where a testator makes specific bequests or where he directs bequests to be first paid and the balance of the estate to be residue, it is his intention that the specific or first paid bequests shall not be diminished by paying more tax than they would if there was no residue, and that if he does not by his will place the entire tax on the residue but leaves the tax to be paid by each bequest, he is presumed to intend that each bequest would pay the tax in the order in which it was assessed, and further that the Act of 1937 applies as well to Pennsylvania inheritance tax as to Federal estate taxes.

We must reject this theory because the Supreme Court in Mellon Estate, 347 Pa. 520-528, held that the Act of 1937 provides for an apportionment of estate taxes "levied under the provisions of any estate tax law of the United States", or under the provisions of the Act of May 7, 1927, P. L. 859, 72 PS §2303—*"imposing an additional estate tax payable to the Commonwealth* to enable it to have the full advantage of the credits

allowed by the Federal law for taxes paid to the States"; and further (page 534) that the act provides "that the 'estate tax' paid by the fiduciary to the Federal Government, and *the additional Pennsylvania estate tax* paid by the fiduciary shall be apportioned." Reed's Estate, 58 Montg. 148, is also authority for the proposition that the Act of 1937 does not apply to the normal Pennsylvania transfer inheritance tax but only deals with the Federal estate tax and the additional Pennsylvania transfer inheritance tax on account of credits allowed by the Federal Government.

It is also held in the Mellon case that the Act of 1937 deals with the Federal estate tax and so indicates by its title. The act is designated as an addition to section 48 of the Fiduciaries Act and the title specifically states that the added section is for the purpose "of providing for the apportionment of estate taxes in certain cases". The Federal estate tax unlike the normal State inheritance tax is a tax upon the property of the decedent and not upon the transfer thereof. The act provides that estate taxes in all cases shall be apportioned among the parties interested in the gross taxable estate according to the amounts of their interest "except in a case where a testator otherwise directs in his will".

There is no specific direction in the Will under consideration for the payment of inheritance or estate taxes. The will is silent in this respect. In Harvey Estate, 350 Pa. 53, 56, citing Provident Trust Co., Trustee, v. Scott et al., 335 Pa. 231, the Supreme Court held that the Act of 1937 expressly supplies a presumption of the testator's intention, and "is the equivalent of an express provision that these pecuniary legacies are subject to federal inheritance taxes. Unless there is in the terms of the will some provision which is clearly inconsistent with such construction, and, when the will is construed as a whole, will override it, the will shall be construed in accordance with the presump-

tion provided by the statute." The apportionment of Federal taxes in Jeffery's Estate, 333 Pa. 15, is substantially similar to the apportionment herein.

When testator executed his will on November 30, 1939, the Act of 1937 was in effect. He is presumed to have known the law and to have executed his will with knowledge of the provisions of the act as to apportionment. Having failed to direct the payment of the Federal estate tax in a manner other than the apportionment provided for by the Act of 1937, the provisions of that act must prevail, the Federal estate taxes must be apportioned between the three trusts in the proportion that the value of each trust bears to the total value of the property received by all three trusts, and the exemption and deductions allowed by the Federal Estate Law must be credited to all the three trusts in general and not to the first trust, or to any particular one.

The fact that the first trust is at least in part composed of specific personal property, such as the stocks of the two Lock Haven banks, does not affect the liability under the Act of 1937 of the first trust to pay its proportionate share of the Federal estate tax. While these stocks and the residence property of testator were received by him from his first wife, yet he was the absolute owner thereof at the time of his death. They were required to be included in the gross estate of decedent for the purpose of determination of the Federal estate tax and therefore the persons entitled to receive the same are within the class designated in the act.

Inasmuch as the stipulation filed by counsel for the parties containing a statement of both principal and income credits and charges, states that all of the items contained therein shall be considered as if they were included in an account which had been confirmed absolutely by the court, it is not necessary to consider the third question referred to on page seven of this opinion, because the principal charges and credits are

set up without regard thereto, nor is any statement made as to the application of income other than the income credits, and the stipulation specifically states the amount of the unallocated net income to be apportioned among the trust funds is $5,731.92.

Proceeding upon the theory that the burden of the Federal taxes amounting to $3,821.02 should be borne ratably by the trust estates, including the residuary trust estate, and that each trust estate is liable for Pennsylvania inheritance tax, the following apportionment is made:

| | | |
|---|---|---|
| Value of the First Trust | | $49,695.88 |
| Less Pennsylvania Inheritance Tax | $944.22 | |
| and proportion of Federal Estate Tax | 1,868.48 | |
| Or a total of | $2,812.70 | |
| reducing the value of the First Trust to | | $46,883.18 |
| Value of Second Trust | | $50,000.00 |
| Less Pennsylvania Inheritance Tax | $950.00 | |
| and proportion of Federal Estate Tax | 1,879.94 | |
| Or a total of | $2,829.94 | |
| reducing the value of the Second Trust to | | $47,170.06 |
| Value of Residuary Trust | | $2,024.76 |
| Less Pennsylvania Inheritance Tax | $39.47 | |
| and proportion of Federal Estate Tax | 72.60 | |
| Or a total of | $111.07 | |
| reducing the value of the Residuary Trust to | | $1,913.69 |

The first trust consists of specific items of the Lock Haven banks' stocks and the proceeds of the sale of testator's residence. The balance consists of the sum of $16,200, which was to be paid out of decedent's individual estate. Deducting from this amount the State and Federal taxes to be paid by the first trust leaves a balance or value of $13,389.02.

The principal value of the second trust was $50,000, and deducting from it the amount of State and Federal taxes to be paid therefrom leaves a balance or value of $47,170.06.

The value of the residuary trust was $2,024.76, and deducting therefrom its share of the State and Federal taxes leaves a balance or value of $1,913.69, all of which total $62,473.77.

The income is therefore allotted in the proportion that the amount of cash due to each trust bears to the total amount of cash due to the three trusts. This apportionment is made as follows:

| | |
|---|---:|
| To the First Trust is awarded from Income | $1,203.70 |
| To the Second Trust is awarded from Income | $4,298.94 |
| To the Third or Residuary Trust is awarded from Income | $229.28 |
| | $5,731.92 |

However, respondent received during administration from income the sum of $2,739.01, which is charged against the proportionate share of income to the second trust, leaving a balance due of $1,559.93, or a total amount of income to be paid by the executors to the three trusts of $2,992.91.

### Decree

And now, January 14, 1946, it is ordered, adjudged and decreed that distribution of the Estate of B. F.

Geary, deceased, be awarded as set forth in the foregoing opinion, the costs to be paid out of the estate.

The clerk of the Orphans' Court of Clinton County is directed to file this opinion, enter the foregoing decree nisi, give notice to the parties or their counsel of record and, unless exceptions are filed to this decree nisi within 10 days after such notice, this decree shall be entered as a final decree by the clerk.