# Davis Estate

*High, Swartz, Childs & Roberts*, and *Morgan, Lewis & Bockius*, for accountants.

Taxis, P. J., March 7, 1960: . . . Several matters have been presented requiring determination by the court.

The first relates to an award of personal property to Rita Miriam Purcell, now Miriam Clegg. In section fifth, IV, of his will, decedent bequeathed certain personal property to Rita Miriam Purcell, now Miriam Clegg, as follows:

"IV. I also give unto RITA MIRIAM PURCELL the right to use and enjoy, so long as she lives, all the tangible personal property apart from any cash or securities that may be in or about my home at 441 Sycamore Avenue, Merion and in or about my said farm at Birchrunville, with the right vested in her to disposes of any or all of such personalty as she, at her sole discretion, may see fit, either during her lifetime or at her death; it being my wish but not my direction that such items as she shall not have disposed of at her death she would bequeath in her last Will and Testament unto my nephew, GEORGE D. SNELL, now residing at Bar Harbor, Maine, but if RITA MIRIAM PURCELL shall fail to leave a last Will and Testament or leaving such a Will shall fail specifically to dispose of such items, or any of them, I direct, anything contained herein to the contrary notwithstanding, that such personalty as said RITA MIRIAM PURCELL has not disposed of at the time of her death shall pass to and be distributed to my said nephew, GEORGE D. SNELL, absolutely."

Section 13 of the Estates Act of April 24, 1947, P.L. 100, 20 PS §301.13, is applicable in this situation. It provides that "A person having a present interest in personal property . . . which is not in trust, and which is subject to a future interest, shall be deemed to be a trustee of such property, and not a debtor to the remainderman, with the ordinary powers and duties of a trustee, except that he shall not be required to change the form of the investment to an investment authorized for Pennsylvania fiduciaries, nor shall he be entitled to compensation as trustee."

This same section also provides that such a trustee "unless given a power of consumption," shall be required to enter security.

It could be argued, in view of the wide powers conferred upon Mrs. Clegg by the will, that she has a fee simple interest as opposed to a legal life estate with the power to dispose or consume. However, the Pennsylvania rule is that a life estate is not enlarged to the status of a fee even though the life tenant is given an absolute power of disposal either by inter vivos conveyance or by will where there is a gift over at the death of the life tenant of the portion of his estate not disposed of by him: Hunter, O. C. Commonplace Book, Vol. 5, pp. 54-55, Powers of Appointment by Deed §2-(e), Vol. 5, pp. 72-73, Powers of Appointment by Will §2(d). See also Simes and Smith, Future Interests, 2nd ed. §1488.

In view of these authorities I conclude that the personal property referred to in section fifth IV of decedent's will should be and is hereby awarded to Mrs. Clegg as trustee. I further conclude that no security need be required of Mrs. Clegg, since the will grants her an absolute power of consumption.

The next question requires a determination as to how the Birchrunville property should be awarded.

Under the terms of section fifth I of his will, decedent granted to Rita Miriam Purcell, now Miriam

Clegg, the right to occupy his farm at Birchrunville for life and subject to certain conditions. Section fifth I of decedent's will reads as follows:

"I. I direct that for a period of two years from the date of my death RITA MIRIAM PURCELL shall have the right to use and occupy my home at 441 Sycamore Avenue, Merion, Pennsylvania, and my said farm at Birchrunville, or either of them, free of rent and during said period my Executors and Corporate Trustee shall pay all costs of the upkeep of both of said properties, subject to the provisions hereinafter set forth, necessary for maintaining the same in good order and repair and all charges and assessments thereon, from the principal of my estate. At the end of said two year period she shall have the right to use and occupy either or both of said properties until her decease, free of rent, but after the expiration of said two year period all such cost of maintenance and upkeep and all charges and assessments thereon during such occupancy shall be assumed and paid for by her, in relief of my estate, and in the event of her failure to properly maintain any such occupied property or properties and to pay all charges and assessments when due, the Corporate Trustee shall make such payments and charge the same against the income due and payable to the said RITA MIRIAM PURCELL hereunder."

In April 1957, Miss Purcell, now Mrs. Clegg, advised the executors with respect to the Merion property, that she did not wish to occupy the Merion residence and directed in writing that it be sold. This was done and settlement held on February 14, 1958. She advised the executors that she did desire to occupy the Birchrunville farm property.

I hold that Miss Purcell, now Mrs. Clegg, has no estate with respect to the farm property, since the mere right to use and occupy real estate when coupled

with the provision that such real estate shall be sold if the person having such right ceases to occupy the real estate confers a mere license to occupy upon such person and not an estate: Baldesberger v. Baldesberger, 378 Pa. 113; Calhoun v. Jester, 11 Pa. 474; Sinnott's Estate, 53 Pa. Superior Ct. 383; Shipley's Estate, 45 Pa. Superior Ct. 570.

From a reading of the provisions of the will, it seems clear that it was decedent's intention that the farm property be held by the trustees in the event Mrs. Clegg decided to occupy the property, particularly in view of the duties imposed upon the corporate trustee requiring it to see that Mrs. Clegg properly maintained the property and "paid all charges and assessments thereon" upon the expiration of the two-year period. Moreover, it was the trustees' duty to sell the property, once the trusts have been established, in the event that Mrs. Clegg at any time directed them to make such a sale.

Sinnott's Estate, 53 Pa. Superior Ct. 383, 387, is in point. In that case testator directed that his wife be permitted to occupy rent free his residence for the term of her life, if she so desired, provided that if she did not desire to reside at the residence or did not wish to occupy the same, the residence was to be sold by his executors. Testator bequeathed the residue of his estate upon certain trusts to his executors as trustees. The question was whether the widow had the duty to pay the annual real estate taxes upon the property, and it was held by the court that she was not so required, stating as follows:

"The direction to the executors and trustees confirms the view, that the testator had clearly in his mind the intention to give his wife the privilege of living at the residence, and that when she no longer continued to personally reside there that the place should be sold; that intention he expressed in words which admit of

no misunderstanding, or doubt. The enjoyment by the widow of the right to occupy the residence depends upon the express condition that she shall continue to there reside. This was undoubtedly an incumbrance or charge upon the title, in the hands of the trustees, but an incumbrance is not necessarily an estate in land. The right of the widow to occupy the residence is a personal privilege or license, not a life estate in land: *Wusthoff v. Dracourt*, 3 Watts, 240; *Calhoun v. Jester*, 11 Pa. 474; *Callen v. Hilty*, 14 Pa. 286; *Baldwin v. Taylor*, 166 Pa. 507; *Daly's Estate*, 11 W.N.C. 514; *Shipley's Estate*, 45 Pa. Superior Ct. 570. Her right is not alienable, and is not liable to judgment and execution by her creditors. It was evidently the intention of the testator that the occupancy of the residence by his wife should be under the title of the executors and trustees, that she should hold under them, that the relation was one to which the payment of rent would be an appropriate incident, and it was no doubt for this reason that he directed that she should be permitted to occupy 'rent free' his residence. The appellee was not vested with such an estate in the land as to render her liable for the payment of the taxes, and the specifications of error are dismissed."

After consideration of the foregoing, I conclude and hereby award the Birchrunville property to the trustees of the residuary estate under section sixth II of the will, subject to the right of Mrs. Clegg to occupy the premises in accordance with the terms of section fifth I.

The final question for determination relates to the payment of insurance premiums with respect to insurance carried on the Birchrunville farm. The account shows that on July 24, 1957, the executors paid for fire and extended coverage insurance out of principal of the estate with respect to the Birchrunville property. This policy will expire on May 28, 1960, and the

question arises as to the propriety of making this payment out of principal.

Although, generally, executors should pay for the cost of fire insurance on property which they are administering out of principal, it is to be noted that the instant policy was purchased several months after Mrs. Clegg had advised the executors that she wished to occupy the Birchrunville property and, in addition, that the policy in light of the date of this adjudication will not expire until after the property has been awarded by this court to the trustees of the residuary estate. Thus it could be contended that the usual trust rule (see 3 Scott on Trusts, §233.2 (2d ed.)) that the cost of insurance with respect to a trust estate is payable out of income should have been applied after Mrs. Clegg notified the executors of her intention to reside at the farm property or at least should be applied as of the date the property herein is awarded to the trustees. It might be noted in passing that clause section fifth I of the will directing the executors and corporate trustees to pay "all charges and assessments thereon," i.e. on the Birchrunville property, for a period of two years after decedent's death does not authorize the payment of insurance premiums, since the words "charges and assessments," refer only to items which could subject the property to liens and encumbrances such as taxes or sewer assessments, etc.

However, even if trust principles are applicable under the Principal and Income Act of July 3, 1947, P. L. 1283, the cost of the insurance premium should be paid out of principal for so long as Mrs. Clegg wishes to occupy the Birchrunville property. Section 11 of the act, 20 PS §3470.11, provides, in part, as follows:

"All ordinary expenses and charges, incurred in connection with the trust estate or with its administration and management, shall be paid out of income, but

such expenses, where incurred in disposing of or as carrying charges on unproductive estate, shall be paid out of principal, . . ."

Since it appears that the Birchrunville property is now part of the "res of the residuary trust estate" and will be "unproductive estate," I conclude that the cost of insurance premiums thereon should be paid out of principal of the residuary estate, and accordingly the court approves the expenditure of principal for the insurance policy covering the Birchrunville premises . . .

And now, March 7, 1960, this adjudication is confirmed Nisi.